## LEE v. WHARTON.

Written admissions of attorneys, made to obviate the necessity of introducing testimony, are binding on their principals, (in the absence of fraud or mistake ;) and where they are intended to be used only for a particular trial or Term of the Court, it ought so to be expressed in the writing ; or if any doubt exists as to the construction which ought to be given to the agreement, then it would be manifestly proper that the party intending to resist the admission, on a subsequent trial, should give the adverse party notice to that effect. (SPECIAL COURT.)

Before the Act of 1846, the statute did not expressly require that every paper, filed in a cause, should be marked "filed," with the date of filing and the signature of the Clerk indorsed on it ; and it was the custom to mark each paper with the file number of the suit and also a number of its own, by which the loss or absence of any paper might be ascertained by the absence of its number from the papers of the case ; and it is believed to have been the uniform practice of the Courts heretofore, and we think reasonable and fair, to regard every paper, found among the papers of a case, originating prior to 1846, with the file number of the suit indorsed upon it, as properly filed, unless a suspicion is cast upon it, as by the party objecting to it. (SPECIAL COURT.)

Where an action of trespass to try title had been instituted by Wharton v. Lee in 1839, tried in 1843, and came on again for trial in 1852, the Court permitted the following paper, signed by the attorneys in the case, marked No. 4 and having the file No. 39, (the number of the case,) to be read in evidence, in connection with a part of the statement of facts made upon the former trial, which was offered to identify it :

" The concession to Brown under which we both claim.

" The conveyance from Groce to Wm. H. Wharton.

" That the plaintiffs are his heirs, and that the defendant was in possession when sued.

" GILLESPIE,<br>" CROSBY."

And the Court construed it to be a binding agreement of counsel to waive proof of the facts recited, especially in the absence of notice that its effect as such, would be resisted at the subsequent trial. (SPECIAL COURT.)

A public act of sale, purporting to have been executed at Matamoros in April, 1828, before a notary of that place, with the customary forms and solemnities, and which appeared, by Stephen F. Austin's indorsement thereon, to have been received and filed among the archives of the municipality of Austin, where the land was situated, was held to be inadmissible without further proof of its execution, when offered in evidence, in 1852, by a party who was in possession claiming under it. The suit, however, was brought in 1839. (SPECIAL COURT.)

Where a defendant in trespass to try title, claims by prior purchase unrecorded, the purchase must be duly proved, before testimony that the subsequent purchaser had notice, is admissible. (SPECIAL COURT.)

A stranger cannot raise objections to irregularities in a Sheriff's sale, which might

Lee   v.   Wharton.

have been obviated by the consent or acquiescence of the judgment debtor.—
(SPECIAL COURT.)

The Alcalde is the proper officer, under the Civil Law, to execute the deed to a pur-
chaser at an execution sale. The Judge may, if he choses, execute his own sen-
tence ; and when he does so, he may proceed without a written execution—but
he is, under all circumstances, the proper person to make title to the purchaser.
(SPECIAL COURT.)

See this case, as to what is said respecting a code of provisional regulations, which
was framed by Stephen F. Austin for his colony, and approved by the Governor
of Texas ; and respecting rights adjudicated under it. (SPECIAL COURT.)

The deed of an Alcalde of the municipality of Austin, which recited, (but not at
full length,) all the previous proceedings, resulting in a judgment, execution, sale
and act of possession, was, of itself, full evidence of title, at the time of its execu-
tion ; we require now, proof of its execution, according to the present laws of evi-
dence ; but, its execution once proven, the instrument itself becomes full proof of
everything of which it was the evidence, at the time of its execution. (SPECIAL
COURT.)


Appeal from Travis. At the April Term, 1843, a trial was
had, and verdict and judgment rendered for the defendant,
Lee, from which the plaintiffs appealed to the Supreme Court.
At the —— Term, 184–, of the Supreme Court, the judgment
was reversed by consent of parties, and the cause remanded for
a new trial. The trial and judgment from which this appeal
was taken, were had in 1852. The admissions of counsel,
upon which points were made, appeared to have been made
on the eve of the former trial. The fifth interrogatory to
Oliver Jones, and which was excluded, was, " State, if you
can, if said property was appraised according to law ?" The
part of Jones' testimony, which was excluded, was, that he
was in the habit of having real property appraised, previous
to sale, where the title was not doubtful, and where it was so
appraised and did not fetch two-thirds of its appraised value,
there was no sale ; that his impression was that the land in
question was not so appraised, because he had understood and
believed that the same had been previously sold by Brown in
Matamoros ; and that when he sold the land, he informed the
company present, of his belief of such sale by Brown. The
judgment was prior to the deed to Cutter. The other facts
will be found in the opinion of the Court.

Lee v. Wharton.

Special Court composed of WILLIAM E. JONES and ROBERT HUGHES, Special Judges.

*Webb & Oldham*, for appellant. I. But if we admit that the Alcalde was the proper person to execute the deed, then we insist that its execution was not a judicial, but a mere ministerial act. A judicial act is one which implies an exercise of judgment. A ministerial one, is such as an officer is bound to perform in the discharge of his official duty, whether his judgment approves it, or not. Now, if Groce was entitled to the land by virtue of his purchase at the Constable's sale, the officer who was charged by law with the execution of the title, was bound to execute it to him, and whether that officer was Alcalde, or Constable, he had no judgment to exercise in the matter. It was an act defined by the law, and the performance of which the law demanded. If then, the execution of the deed to Groce was a ministerial act, the recitals of that deed, beyond the mere facts of the sale of the property, its purchase, and the payment of the purchase money, must go for nothing. They cannot be received to establish other facts, dependent upon other and higher grades of evidence.

It is laid down in a great number of authorities, and it may be said that it is not seriously controverted in any, that " where a purchaser through sale under a judgment and exe- " cution, sues as such to recover the property purchased, he " must produce the judgment and execution, for they are parts " of his title ; and this is so whether the property be real or " personal." (Cowen & Hill's Notes, 2nd pt. p. 1079, 1081 ; 12 Wend. R. 74, 75, 76 ; 16 Wend. R. 563 ; 4 Wash. C. C. R. 624, 625 ; 12 Johns. R. 213 ; Taylor's N. C. R. 107 ; 2 Stark. R. 199 ; 7 Johns. R. 535 ; 1 Bing. R. 209.)

II. The next paper offered in evidence by the plaintiffs, and admitted by the Court, against the objections of the defendant, was one which, of itself, had nothing to characterize it, or define its object. It was a mere loose scrap, found among the papers

of the cause, without carrying with it any evidence of how it got there.   It was not entitled as belonging to the case, nor did it appear to have been filed as a paper pertaining to it.   It only stated upon its face, these few simple and almost unmeaning words :  " The concession to Brown, under which we both " claim ;  the deed from Groce to  W. H. Wharton ;  that the " plaintiffs are his heirs; and that the defendant was in possession when sued.   Gillespie ;  Crosby."   Now the most that could reasonably have been claimed for a paper like this was that it was a mere memorandum, made for some purpose or other, but what, or when made, none, except those who made it, could have told.   To get it in as evidence in the cause, however, another manifest error was, we think, committed by the Judge. He allowed the plaintiffs to read so much of another paper, called a statement of the facts, which occurred at the former trial in Washington county, in 1843, as was supposed to relate to the matters contained in this ;  and the two together were received as evidence to establish facts, without which, the plaintiffs could not recover.

The rulings of the Court, in this portion of the case, were so manifestly erroneous, that an argument to show them to have been so, is almost superfluous.   The paper, and the statement of the facts, called in to support it, were, no doubt, offered with a view to show that the land had been conveyed by Groce to W. H. Wharton, and that the plaintiffs were the heirs of Wharton ;  but they were wholly incompetent to establish either, even had their admission not been so strange a departure from the well known and long established rules of evidence.

In the first place, the paper itself contained not a single feature or semblance of a document, which entitled it to be received as evidence in any other case, without explanation ; and the Court seems to have been so well aware of this, that it permitted another paper, equally objectionable, to be read for the purpose of affording that explanation.   A statement of what took place at a former trial of the cause, may not have

exhibited the real merits, or anything like the real merits of the case; and for this reason, new trials are most frequently granted ; but in no event, could such a statement be used on a new trial, except as very inferior sort of secondary evidence. If Wharton had a deed from Groce for the land, that deed should have been produced in support of the claim, or its absence accounted for. The deed was the best evidence, and none other could supply its place, unless it was shown to have been lost, or beyond the power of the plaintiffs to produce it. If it was shown, by competent testimony, to have been lost, or beyond the power of the plaintiffs, then a certified copy of it, would have been the next best evidence; (C. & Hill's Notes, 2d Pt. p. 1217;) and if it was made to appear, that no copy could have been had, then proof of its previous existence, its loss, and that no copy could be had, might have opened the door for the admission of parol proof of its contents. We are not disposed to urge at this time, that what was proved, or admitted at a former trial, in respect to it, might not have been competent testimony at a subsequent one, to establish the same facts, provided it was shown, that the witnesses who testified to these facts at the former trial, were dead, or could not, from unavoidable circumstances, be produced to testify to the same facts at the subsequent one ; but we insist, that to let in this secondary evidence, it must have been shown, that the party who offered it, was forced to rely upon it, by circumstances entirely beyond his control. In this case, without producing the original deed, if there was one, or alleging it to have been lost, or offering to account for its absence in any way, the plaintiffs, by a very defective kind of secondary evidence, attempt to show that on a former trial, it was admitted that there was a deed from Groce to Wharton. (2nd Pt. Cowen & Hill's Notes, p. 1208, and authorities there cited.)

But suppose, we were to admit, for the argument, that the paper, signed "Gillespie, Crosby," was properly received as evidence in this cause, (and it can be admitted for no other purpose,) what did it prove ? Why, if anything, that Groce

8

executed a deed to W. H. Wharton; but for what object was that deed? Such an admission might have relieved the plaintiffs from the necessity of proving the execution of the deed, if produced, but it surely did not prove its contents, or inform the Court, or any one else, what they were. If we construe this paper by the simplest rules of grammar, we should say, it meant that the deed from Groce to Wharton, was to prove that the plaintiffs were his, Groce's heirs; and yet they could not have referred to it for that purpose, because, had they established that fact, it would, when applied to the allegations of their petition, have shown that they could not recover in this action. Or, if they sought to prove by it, that the deed would, if produced, show the plaintiffs were Wharton's heirs, it was equally defective, because Wharton at that time had no heirs. *Nemo est hæres viventis;* and, secondly, because a deed from Groce to him, was not the best evidence to establish that fact, if it could possibly have existed.

This Court, if it were disposed to speculate on the subject, might think that the plaintiffs intended to establish another object by the introduction of this paper; but, we respectfully submit, that such speculations can find no place in this tribunal. If the paper of itself proves anything, and was properly admitted, give to it the force of that proof; but we insist, that no weight should be given to it, beyond what a legitimate construction of it will warrant, merely because it may be supposed that the parties intended something by it, which they did not express upon its face.

We think, viewing the whole of the plaintiffs' evidence, that they signally failed to show a right to recover in this suit, and that, therefore, the judgment of the District Court must be reversed. They relied upon a Sheriff's deed to Groce, or what was only equivalent to a Sheriff's deed, and they have wholly failed to prove that the person who executed that deed, was authorized by any process competent to that end, to sell the land, and to execute a title to the purchaser for it. They totally failed to show, by any legal proof, that if Groce acquir-

ed any legal title to the land, that title was conveyed to Wm. H. Wharton, whom they claim to be their ancestor; and if conveyed to him, they have totally failed to prove that they, the plaintiffs, are the heirs of Wharton, or derived title from him by any other means.

III. But if these manifest defects in the plaintiffs' title, and in the rulings of the Court to sustain it, are not sufficient to reverse the judgment, we think that the errors, committed in ruling out the evidence offered by the defendant, will be sufficient.

The defendant offered in evidence a deed from W. S. Brown to R. Cutter, dated ——, 1828, to show that, when the land was alleged to have been levied upon, and sold as the property of Brown, it was not his property, but the property of another to. whom he had previously sold it. This deed was executed in the city of Matamoros, (then, as well as the department of Texas, a place within the jurisdiction of Mexico,) before a Notary Public, according to the forms and ceremonies required by the laws of Spain and Mexico, to give it authenticity in any other place, within that jurisdiction. It was then received as authentic in the municipality of Austin, where the land was situated, and filed among the archives of that municipality, as an authentic document, by Stephen F. Austin, the chief of that municipality, as is shown by his indorsement upon it. Yet it was rejected by the Court, for want of proof of its execution.

In 1 Partidas, Tit. 19, Law 1, in defining what is meant by a Notary Public, it says, in one of its definitions, that a Notary is one " who executes acts of sale, purchase, and the contracts or agreements, which men enter into, in towns and cities." (1 Part. p. 244.) And in the same volume, Tit. 18, Law 114, in speaking of what instruments of writing will be valid, and make proof of the agreements they contain, it is said, "that every act, " made by the hand of a Notary Public, in which is written " the names of at least two witnesses, the day, month, year, " and place, when and where it was made, makes proof of " what it contains." (1 Part. p. 232.)

This deed from Brown to Cutter was executed in strict conformity with this law. It was produced and filed in the municipality of Austin, within the jurisdiction in which it was executed, and where the land lay, and in which it was afterwards said to have been sold as the property of Brown. Being in the same jurisdiction, it required no proof of the authority of the officer to execute it, beyond his rubric, than would be required at this time, and in this State, of a Notary Public, who executed an instrument of writing, authorized by law, with his seal annexed. Either, within the jurisdiction, or limits of the government, would make proof of themselves. This deed, then, at the time and place of the sale, was full proof that the land when sold, was not the property of Brown, and it ought to have been admitted in evidence to establish that fact.

IV. The Court also erred in excluding the evidence of Oliver Jones. The manner of taking his testimony by interrogatories, and bringing it into Court, was not objected to, but the facts, stated in his evidence, were objected to and ruled out. Those facts not only went to establish the existence of the deed from Brown to Cutter, previous to the sale of the land, but they proved notice to the purchaser, of that fact. Groce, then, in bidding at the sale, did so with a full knowledge of the rights of Cutter, and those who might claim under him, and the proof of this was important evidence on the part of the defendant, in resisting any title, which he might set up in virtue of that sale; but the Court ruled out this evidence, and thereby deprived the defendant of an important matter upon which he relied in his defence.

*A. J. Hamilton*, for appellees. I. The deed by the Alcalde, Duke, to Groce was fully proven. The deed itself was *prima facie* evidence of all it contained or purported to be. It was an authentic act. (3 Martin R. 115; 5 Id. 382; Id. 406; 6 N. S. 268; 1 Partidas, 222.)

There can be no valid objection to the testimonio of the deed from Duke to Groce being received in evidence. The fact of

the destruction of the archives at San Felipe was satisfactorily established by Bryan, Brewster and others, and more than sufficient under the rulings of this Court in the case of Titus v. Kimbro, 8 Tex. R. 210 ; Keegans v. Allcorn, 9 Tex. R. 25 ; Bell v. McDonald, Id. 378 ; and Bissell v. Haynes, Id. 556, to raise every necessary presumption. The secondary evidence was therefore admissible, admitting the testimonio to be only secondary evidence. (7 N. S. 550 ; and 9 La. R. 371.)

It was not necessary to prove the judgment against Brown. The sale was not only a judicial sale, but, under the Civil Law, the execution of the deed was a judicial act, and was *prima facie* proof of every necessary preceding act. (10 Peters, U. S. R. 449 ; 3 Tex. R. 390 ; 6 Martin, 668 ; 1 White's Recop. 326 ; 11 La. R. 283.)

But if it had been necessary to make such proof, it is dispensed with by the admission of the appellant in writing. It is denied, however, that the appellant is bound by such admission. That he was, see the following authorities, 3 Phil. Ev. p. 1067, note 723 ; 12 Mass. R. 412.

II. It will be insisted that the sale was not legal, (Alcalde's sale,) because there was no appraisement. None was necessary prior to the passage of Decree No. 277, Art. 127, Laws and Decrees, page 268 ; there was no law or decree of Coahuila and Texas requiring appraisement.

III. Nor was there any error in rejecting the testimony of Jones, upon this subject.

It was not competent for him to prove what the law was ; and as to the facts stated by him, they only established what his practice was, as a ministerial officer, in making sales ; and in doing this, he proved that in just such cases he required no appraisement, that is, when there was doubt of good title.

But if the law had required it, the objection would not avail the appellant in the form in which it was made. He must have proceeded to set aside the execution and sale. (1 White's Recop. 308, 309, 310 ; Id. 325, and particularly 326.)

IV. The deed from Brown to Cutter, executed in Matamoros,

was properly rejected. The deed was in no way proved. It cannot be insisted, with any plausibility, that the Court could judicially know the official character of an inferior civil officer of the State of Tamaulipas. This would not have been the case with a Court of the State of Coahuila and Texas or of any other State of the Mexican confederation. The Constitution of the Republic (so called) of Mexico, in force at the date of the execution of the deed in question, contained a provision, identical with a provision upon the same subject, contained in our United States Constitution, to wit: "Each State "shall give faith and credit to the acts, registers and proceed- "ings of the Judges, and other authorities of the other States; "and Congress shall establish a uniform rule for proving such "acts, registers, &c. (1 White's Recop. p. 407, Art. 145.)

No presumption can be indulged in favor of the acts of offi cers of foreign States or governments; they must be proved.

I further contend that if the deed from Brown to Cutter had been proved, still the title of the appellees must prevail. The judgment rendered against Brown, and which was admitted, was prior in date to Cutter's deed, and created a lien on the land in question, that could not be defeated by any sale that Brown could have made. (1 White's Recop. p. 319 to 321, inclusive; Law 1, Tit. 11, 4 Rec.; Law 1, Tit. 5, Lib. 11, Novissima Rec.)

V. The remaining question is as to the Court below holding the appellant, to the written admissions of his counsel, in respect to the concession of the government, to Brown, of the land in controversy, the conveyance from Groce to Wm. H. Wharton, and the appellees being the heirs at law of Wharton.

That the appellant was bound by these admissions, I cite the following authorities, Phil. Ev. (New Ed.) Vol. 1, p. 105; 17 Johns. R. 130; Id. 70; 9 Id. 54; 4 Wendell, 334; Id. 396; 7 Id. 281; Cowen & Hill's Notes to Phil. Ev. Vol. 2, Part 1, page 200; 2 N. H. R. 520; 2 Cain, 155; 13 Johns. R. 141; 8 Id. 451; 11 Id. 128. These authorities are altogether satisfactory, and conclusive of the question.

*T. H. Duval*, also, for appellees, argued all the points and cited a great many authorities, in a very able brief, which the Reporter regrets he cannot publish, because of its length.

*Sayles & Blanton*, also, for appellees.

W. E. JONES, S. J. The appellees were plaintiffs in the Court below; and the object of the suit, which was instituted as far back as 1839, is the recovery of a half a league of land, on the Brazos river, in Washington county, where the cause originated, having been transferred by change of venue to Travis. The land, which is the subject of contest, is part of the headright league of Wm. S. Brown, as a colonist, and is claimed by the appellees, under an Alcalde's deed to Jared E. Groce, and a conveyance from Groce to Wm. H. Wharton, whose heirs they claim to be. The deed of the Alcalde to Groce was made to him, as purchaser at an execution sale, in October, 1828, based upon judgments alleged to have been rendered, in 1827, against Brown. The appellants claim under a deed from Brown to one Cutter, dated and purporting to have been executed at Matamoros, in April preceding the date of the Alcalde's deed to Groce. The judgment of the District Court, sitting without a jury by consent of parties, was in favor of the plaintiffs, appellees here.

Several bills of exception were taken to the rulings of the District Judge, on the trial, and are made grounds of error in the assignment of errors.

The first assignment of error, is, that the Judge permitted the plaintiffs to read as evidence, an agreement, purporting to be signed by the attorneys of both parties, to prove the loss of the record of the judgments against Brown in the Alcalde's Court, under which the land was sold to Groce. The agreement admits on the part of the defendants, that two witnesses named in it, would swear to the loss of the records referred to, if they were present; and it is now insisted that the paper should have been excluded, having been intended

to serve its purpose for a single Term of the Court, and not to be used thereafter. Attorneys are presumed to be careful in making written admissions; they are presumed to understand the effect of those admissions; and where they are intended to be used only for a particular trial or Term of the Court, it ought so to be expressed in the writing. Or, if any doubt exists as to the construction, which ought to be given to the agreement, then it would be manifestly proper that the party intending to resist the admission, on a subsequent trial, should give the adverse party a notice to that effect. But as the fact established by this agreement, is fully established by other evidence, it is deemed unnecessary to discuss it any further.

The second assignment is that the Court erred in permitting the plaintiff to read as evidence a paper, marked No. 4, and having the file No. 39, indorsed thereon. It is in the following words:

"The concession to Brown, under which we both claim.

"The conveyance from Groce to Wm. H. Wharton.

"That the plaintiffs are his heirs, and that the defendant "was in possession when sued.

"GILLESPIE,
"CROSBY."

The defendants objected to this agreement being read as evidence, because it did not appear to have been filed, and because it did not appear to apply to any particular case, pending before the Court.

A trial had been had in 1843, upon which the same paper was used to establish the same facts now sought to be established by it; and we see no impropriety in permitting the statement of facts, prepared and certified to the Supreme Court upon that trial, to be introduced for the purpose of identifying the paper, under the circumstances. No notice had been given that the agreement would be resisted. Three years had elapsed since the first trial, and the venue had been changed to a distant county.

At the time of the first trial in 1843, the statute did not

expressly require that every paper filed in a cause, should be marked "filed," with the date of filing and signature of the Clerk indorsed on it, as prescribed by the Act of 1846; and it was the custom at that period, to mark each paper with the file number of the suit to which it belonged, and also a number of its own, by which the absence or loss of any paper might be ascertained by the absence of its number from the papers of the case. And it is believed to have been the uniform practice of the Courts heretofore, and we think reasonable and fair, to regard every paper found among the papers of a case, originating prior to 1846, with the file number of the suit indorsed upon it, as properly filed, unless a suspicion is cast upon it by the party objecting to it. Nor do we perceive that any hardship is imposed upon the appellant, by the ruling of the Court below, upon this point. The first admission in the paper was for the benefit of both parties; it was natural that both parties should admit the title of Brown, under which both claimed. The other admissions in the paper are not of a character seriously to jeopardize the appellant's rights. In the first answer, filed by him in 1841, he pleads specially that he claims the land in controversy by regular conveyances from Brown to himself, which is regarded as tantamount to an admission of possession. The remaining admissions, to wit: the conveyance from Groce to Wharton and that plaintiffs were the heirs of Wharton, are such as are frequently made in similar cases—they do not enter into the substance of the contest of title, the decision of which would settle the rights of the parties. Being subordinate facts, not derogating in any way from the merits of the appellant's title, a presumption is raised in favor of the fairness and genuineness of the agreement as a paper properly in the case. The efficacy of the paper, when once admitted, to prove the facts stated in it, is not questioned.

The third assignment of error is, that the District Judge refused to admit as evidence a deed from Wm. S. Brown to Cutter for the land in controversy, a translated copy of which

9

appears in the bill of exceptions upon which this assignment of error is founded.   It purports to have been executed at Matamoros, in April, 1828, before a Notary of that place, with the customary forms and solemnities.

Whether this instrument would have been admissible in evidence in the Courts of Coahuila and Texas, being executed before a Notary of another State, without some further authentication, seems, at least, doubtful; and it is believed that an Act of legislation would have been necessary, by the certificate of some superior authority, as to the official character of the Notary.   However that may be, it is clear that it was properly ruled out, without proof of its execution, which does not appear to have been attempted to be made.   It does not come within the provisions of the statute.   (Hart. Dig. 745.) Being an instrument which is not only permitted, but ought to be recorded, and having never been proven up, and recorded and filed, three days before the trial of the case, it was properly rejected without proof of its execution.   Nor does it come within the provision of Article 746, Hartley's Digest, which provides that copies of instruments between private persons, filed in the office of an Alcalde or Judge, prior to the 1st day of February, 1837, may be admitted in evidence, upon the certificate of the proper officer, having the custody of them.   Nor is it aided by the indorsement on it, of its reception in the archives of Austin's colony, in 1829.   Upon no principle was it admissible in evidence, without proof of its execution.

The fourth assignment, that the District Court erred in ruling out the fifth interrogatory, propounded to Oliver Jones, and so much of his answers to other interrogatories, as related to the manner of making the sale of the land in controversy, under the judgments against Brown, is rendered unimportant by what has been said commenting upon third assignment.   Two principal points were attempted to be established by his testimony: 1st. Notice to Groce at the sale, of the previous sale by Brown to Cutter.   2nd. That there was no appraisement of property.

The exclusion of the deed of Brown to Cutter from evidence, renders the notice wholly immaterial. The rejected deed, for the purposes of this decision, must be regarded as having never had existence; and notice of a prior sale, of which no evidence is produced, can work no injury to subsequent purchasers. The question, also, of the lien of the judgment, becomes immaterial. Had the deed from Brown to Cutter been fully proven and admitted in evidence, the questions of notice to the purchaser at the judgment sale, and as to the lien of the judgments against Brown, would have become important and prominent in the decision of the case. Nor is it it regarded as important to a correct decision of the case, whether the testimony of the witness Jones was admitted or ruled out, in relation to the appraisement—if admitted, it establishes nothing, and its being ruled out, could work no injury to the appellant.

The fifth assignment is, " that the District Court, sitting as " a jury, found in favor of the plaintiffs, in the absence of proof " of the original judgments, or either of them—the execu- " tions, levy, citation and decree of sale, under the laws in " force at the time."

This assignment brings out the most important questions arising in the case, and those most difficult of solution.

The deed of the Alcalde, Thos. M. Duke, to Jared E. Groce, the purchaser at the judgment sale, was proven on the trial. The official character of Duke was admitted; and his handwriting, and the handwriting of both the witnesses, Austin and Williams, were proven; and the deed was admitted without objection on the part of the appellant.

This deed recites, with great particularity and minuteness, the rendition of two definitive judgments against Brown, the day of ——, 1827, giving their dates, sums and names of the plaintiffs, the application for executions and their issuance, the levy upon the land in controversy, the decree of sale, and the sale on the 17th October, 1828. The deed is followed by a formal act of possession, executed with the same solemnities

and in presence of the same witnesses, and is dated four days afterwards. The judgments were not produced on the trial, nor their existence established positively, except by the recitals in the deed. The executions, levy and sale were proven by that part of the testimony of Oliver Jones not ruled out, in addition to the recitals in the deed. The loss of records of Austin's colony, where the records of these judgments should have been, is fully established by the evidence. ·

It is objected by the appellant's counsel, in his brief, that the Alcalde was not the proper person to make the deed to the purchaser at execution sale. This is a mistake; under the Civil Law, he was the proper person. The Judge may, if he choses, execute his own sentence; and when he does so, he may proceed without a written execution; but he is, under all circumstances, the proper person to make title to the purchaser. In doing so, he speaks in the name of the debtor whose property is sold, as if his attorney in fact. He grants and conveys in the debtor's name 'and that of his children, heirs and successors, divesting him and them of all title in the property and vesting it in the purchaser, guarantying in the name of the debtor the soundness of the title thus conveyed. The Judge subscribes the deed as *grantor*—" *otorgante*"—in the presence of a Notary, who gives the purchaser a testimonio; as his title. The purchaser is then placed in actual possession of the property, and an act of possession is extended with the same solemnities as the deed of conveyance. It would seem to follow as a necessary consequence from this, that the sale is, in every case, a judicial sale, and the deed a judicial act— that the recitals in the deed, of all the previous steps, from the incipiency of the suit to the sale, being necessary parts of the deed, become authenticated and proven, by the authentication or proof of the deed. The deed, thus executed and authenticated, becomes, in the hands of the purchaser, evidence of itself alone, of title to the property, not conclusive, but sufficient, until attacked and set aside, in the manner prescribed · by law. It furnishes precisely the same proof of title, which

a Sheriff's deed, supported by a valid judgment and levy, furnishes at Common Law.

In the third volume "Febrero Mexicano," pages 45 and 48, and also in Novissima Recop., are to be found forms of a judicial sale, and an act of judicial possession, very similar, in form, to the form of the deed, made by Alcalde Duke to Groce. The only material difference between them is, that the form in Febrero, seems to make it proper that the principal decrees in the progress of the cause, shall be copied in the deed as well as recited. As the work, in which the form is found, contains no provisions declaring it necessary to copy the decrees in the deed, the form can only be regarded as a form recommended as suitable and proper; but whether essential to the validity of the deed or not, is difficult to be determined. But even if necessary under other circumstances, the deed under consideration is entitled to be regarded in a somewhat different light. At the period of its execution, the Spanish Laws had never been promulgated among the colonists; they could not be obtained, and Austin had been vested by the Provincial Deputation of Nueva Leon, Coahuila and Texas, with very extensive powers, civil and military, for the government of his colony. (1 White Recop. 571.) He formed a code of provisional regulations in civil and criminal matters, which was approved by the Governor of Texas. (1 White, 574.) These regulations must be regarded as having the force of laws; and rights adjudicated under them, are entitled to the protection of the Courts, at the present time. What those regulations were, are not known to the Court; but, doubtless, the proceedings, judgment, levy, sale, and acts of title and possession, by which the title of Brown to the land in controversy was divested and conveyed to Groce, were in conformity to those regulations—and that the deed is entitled to the same efficacy as similar deeds under the Spanish Laws. We must presume, in favor of the acts of the officer, that they are in conformity to the laws under which he acted. And the presumption is strengthened by the fact, that Austin was one

of assisting witnesses to the acts of title and possession executed by the Alcalde, and probably the instruments were placed in the form in which we find them by his instructions.

Having determined that the sale was a judicial act, and that the deed was, of itself, full evidence of title, at the time of its execution, we come now to inquire whether, or not, it is entitled to the same efficacy and force at the present time. Rights acquired under former laws, remain unchanged and unimpaired under our present system. The remedies for enforcing those rights, and the rules of evidence by which they may be established, are changed; but not the rights themselves. By the rules of the Common Law, a Sheriff's deed is not evidence of title, until the judgment and levy are produced.

Shall we apply this rule to the present case? Shall we require of the purchaser, at a judicial sale, under the Civil Law, while that system was the law of the land, to produce the judgment and levy, and other decrees of the Court in the cause?

We have already seen, that, at the time of its execution, the deed of the Alcalde was full evidence of title; by virtue of it the purchaser was placed in actual possession of the property, and the debtor was dispossessed. We, indeed, require now, proof of its execution, according to the present laws of evidence; but, its execution once proven, the instrument itself becomes full proof of every thing of which it was the evidence, at the time of its execution. In other words, the right and the evidence of right are so blended and interwoven with each other, that one cannot be impaired without impairing the other. In this respect, it stands upon the same footing with all other deeds, executed at that period, whether deeds of commissioners of colonies or of private persons, executed before Notaries. They are evidence now of the same rights of which they were evidence at the time of their execution.

The judgment of the Court below is affirmed.


PETITION FOR RECONSIDERATION.

The appellant respectfully asks the Court for a reconsidera-

tion of the opinion and judgment rendered in this cause. With all due respect to the Court, I do not consider that the questions, upon which the merits of this case depend, have been met and decided. The appellees were plaintiffs in the Court below. It cannot be denied that they must rely upon the strength of their own title to enable them to recover. Possession by the defendant is sufficient to enable him to defend himself against the suit of one having no title.

It is respectfully asked where is the evidence of the plaintiffs' title. It consists of a fugitive memorandum, signed " Gillespie, Crosby." and is in these words:

" The concession to Brown, under which we both claim.

" The conveyance from Groce to Wm. H. Wharton.

" That the plaintiffs are his heirs, and that the defendant " was in possession when sued."

That this paper was objected to, as stated by the Court, is true. In addition to the reasons stated by the Court, it was objected to because it did not prove title in the plaintiffs, and did not dispense with the production of the deed.

The Court, in the opinion delivered, says, " Nor do we per- " ceive that any hardship is imposed upon the appellant, by " the ruling of the Court below, upon this point. (That is, " upon the admission of this paper.) The first admission in " the paper was for the benefit of both parties ; it was natural " that both parties should admit the title of Brown, under " which both claimed. The other admissions in the paper, are " not of a character seriously to jeopardize the appellant's " right. In the first answer filed by him in 1841, he pleads " specially that he claims the land in controversy, by regular " conveyance from Brown to himself, which is regarded as " tantamount to an admission of possession. The remaining " admissions, to wit: the conveyance from Groce to Wharton, " and that plaintiffs were the heirs of Wharton, are such as " are frequently made in similar cases ; they do not enter into " the substance of the contest of title."

Am I right in inferring from the above, that the " convey-

ance from Groce to Wharton," which is the plaintiffs' title, upon the strength of which they must recover, " does not enter into the substance of the contest of title." If it does not, then the plaintiffs can recover upon the weakness of the title of their adversary, and not upon the strength of their own.

The Court further continues : " Being subordinate facts, not " derogating in any way from the merits of the appellant's " title, a presumption is raised in favor of the fairness and " genuineness of the agreement, as a paper properly in the " case. The efficacy of the paper when once admitted, to prove " the facts stated in it, is not questioned."

If the Court intended to state, that the paper read was efficacious to prove the title to the land in controversy to be in the plaintiffs below, and that the defendant does not question the same, I must insist that the Court is mistaken. A reference to our brief in the case, will show that we questioned the efficiency of the proof to establish the fact of title in the plaintiffs. That it is sufficient to establish title in the plaintiffs, is in direct contradiction of the authorities upon the subject. The paper can be taken and treated only as an admission of the defendant and as secondary evidence. Secondary evidence is never admissible when primary can be had. (1 Cowen & Hill's Notes, 540, note 414.)

Secondary evidence of a deed is inadmissible, until the loss of the original is first established. " When the writing is the ex- " clusive medium of proof, in other words when it is the best " evidence, it must be produced or its absence duly accounted " for." (2 Cowen & Hill, p. 1207, note 860, and the authorities there cited.)

The deed of conveyance in this case, was according to the legal rules of evidence, the exclusive medium of proof. It was neither produced, nor its absence accounted for. The Court is referred to 2 Cowen & Hill, note 865, for the cases and circumstances in and under which admissions are allowable as secondary evidence of deeds. The paper read, neither proves the execution of the deed from Groce to Wharton, its contents or validity.

The Court seems to have based its opinion upon this point, upon the supposition, that the suit was to be tried upon the strength of the defendant's title, and not that of the plaintiffs.

Again, the Court say, that the deed from the Alcalde to Groce was a judicial act. This conclusion seems to me to result from the character of the officer who did the act and not from the act itself.

To my mind a judicial act is one which, from its very nature, presupposes a controversy, or subject of dispute between parties litigant—a right claimed on one side, and denied or withheld on the other, upon which the Court is called upon to investigate facts, determine rights, and pronounce judgment. The rights and interests of the parties litigant, are to be ascertained from the examination of facts and the exercise of judgment. In this case, the Alcalde did precisely what the Sheriff does under our present laws, upon a sale of land under execution, and if the Alcalde's deed was a judicial act, it follows, *per* consequence, that a Sheriff's deed is a judicial act also.

But let the deed be a judicial act, and it does not dispense with the production and proof of the judgments, without the most palpable violation of well established rules. Whether, as the Court say, the deed was proof of its recitals, under the Spanish Law, is to my mind totally irrelevant to the case. In Story's Conf. L. 1023, the rule is laid down as follows :

" There are certain rules of evidence, which may be affirm- " ed to be generally, if not universally recognized. Thus, in " relation to immovable property, inasmuch as the rights and " titles thereto are generally admitted to be governed by the " law of the *situs*, and as suits and controversies touching the " same, *ex directo*, properly belong to the forum of the *situs*, " and not elsewhere, it would seem a just and rational, if not an " irresistible conclusion, that the law of evidence of the *situs*, " touching such rights, titles, suits, and controversies, must " and ought exclusively govern in all cases."

If the recital in one judgment, of another judgment, is evi-dence of such recited judgment, under the Spanish Law, it is

not so by the rules of evidence under the Common Law. (Wilson & Gibbs v. Conire, 2 Johns. R. 280.)

W. S. OLDHAM, for appellees.

Petition overruled.