COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 




 
 
  
 OSCAR
 CARRASCO,
  
                             Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                             Appellee.
 
 
  
 '
  
 '
  
 '
  
 '
  
 '
 
 
  
 No. 08-02-00364-CR
  
 Appeal from the
  
 394th District Court 
  
 of Presidio County, Texas
  
 (TC#2419)
 
 




 

O
P I N I O N

A jury convicted Oscar Carrasco of
first-degree murder and sentenced him to forty-seven years in prison.  In his sole issue on appeal, Carrasco argues
that the trial court erred by allowing into evidence a stipulation in which
Carrasco admitted causing the victim=s death.  We affirm.

Factual and Procedural Background








Carrasco has been tried twice for
this offense.  In both trials, Carrasco
raised the defense of insanity.  Before
the first trial, he stipulated in writing to the admissibility of certain
exhibits and further stipulated that he Acaused the death of Ivonne Juarez Duran [the victim], by stabbing her in the
chest, with a deadly weapon, to wit, a knife.@ 
The stipulation was signed by Carrasco, his attorney, the prosecutor,
and the trial judge.   Thereafter,
Carrasco pleaded not guilty and was tried before a jury.  Because the jury was unable to reach a
verdict, the trial court declared a mistrial.[1]

During the second trial, the State
moved to admit the stipulation into evidence.  
Defense counsel objected.  He
claimed that the parties entered into the stipulation because some of the State=s witnesses were unavailable for the
first trial and because the parties wanted to streamline the trial and get the
case to the jury as quickly as possible. 
Counsel also noted that several of the items included in the stipulation
had already been admitted into evidence. 
He concluded:

And therefore, we think that it=s going to just basically be a duplicate of what he
has already introduced.  It=s going
to be used as bolstering some of the other witnesses=
testimony.  And for the reason
that we believe that we had a contractual agreement in nature in the prior
stipulation as to the admissibility of some of the evidence, both by the State
and the Defense, we don=t feel we should be bound by that stipulation at this
trial; for the record, Your Honor.

 

The State responded:

Well, Your Honor, I don=t know
that the characterization of the fact that we entered into a stipulation just
to save the State time in the first trial--I think it went both ways.  It was also to save the Defense time with a
lot of documents that the Defense wanted to introduce.  And, you know, I am not objecting or plan to
object to anything he has to offer this go around.

Basically, I put a little more mortar between my
bricks, but the case is pretty much the same. 
And other than that, I don=t really
have anything to add.  I think it meets
the hearsay exception.








The court then stated, A[T]his sti[p]ulation was made before any trial was had and it was made
for trial purposes.  The stipulation doesn=t say it was made for a trial on a
particular date, and it was not withdrawn. 
It=s a live stipulation, and I am going
to overrule your objection.@[2]

Arguments on Appeal

On appeal, Carrasco argues that the
declaration of mistrial rendered the stipulation legally ineffective and that
the trial court therefore erred by admitting it over his objection.  The State counters that the stipulation was
admissible as an admission by a party opponent. 
See Tex. R. Evid. 801(e)(2).

Standard of Review








In reviewing a trial court=s ruling on the admissibility of
evidence, we must determine whether the court abused its discretion.  Willover v. State, 70 S.W.3d 841, 845 (Tex. Crim.
App. 2002).  This means that we
must uphold the ruling if it is reasonably supported by the record and is
correct under any theory of law applicable to the case.  Id. 
Furthermore, we must consider the trial court=s ruling in light of what was before
the trial court when the ruling was made. 
Id.

Effect of Mistrial

The Texas Court of Criminal Appeals
has stated that a declaration of mistrial renders a pending trial a nugatory
proceeding and that after a mistrial, the case stands
as it did before the mistrial.  Rodriguez
v. State, 852 S.W.2d 516, 520 (Tex. Crim. App.
1993); Bullard v. State, 168 Tex. Crim. 627,
629, 331 S.W.2d 222, 223 (1960); cf. Tex.
R. App. P. 21.9 (AGranting a motion for new trial restores the case to its
position before the former trial, including, at any party=s option, arraignment or pretrial
proceedings initiated by that party.@). 
The Amarillo Court of Appeals considered the effect of a mistrial in Huseman v. State, 17 S.W.3d 704 (Tex.
App.--Amarillo 1999, pet. ref=d).

In Huseman,
the defendant indicated that he wanted to plead guilty and have a jury decide
his punishment.  After being admonished
by the trial court, the defendant signed a stipulation of evidence and pleaded
guilty before the jury.  The court
subsequently declared a mistrial because of a comment made by a witness.  Before the case was tried again, the
defendant moved to withdraw his guilty plea and recant his stipulation.  The trial court denied the motion and
commenced the trial without a new plea from the defendant.  The jury found the defendant guilty and
sentenced him to fifteen years in prison. 
Huseman, 17 S.W.3d at
705.








Citing Bullard and Rodriguez,
the Amarillo Court held that Awhen a mistrial is declared, the proceedings before the
granting of the mistrial become legally ineffective . . . .@ 
Id. at 706.  Therefore, the defendant=s guilty plea was rendered void by
the declaration of mistrial.  Id.  Because a plea by the defendant is
essential in every criminal trial, the trial court erred by refusing to allow
the defendant to enter a new plea after the declaration of mistrial.  Id.

Although Carrasco suggests that this
case is similar to Huseman, we believe  Huseman
is distinguishable.  In Huseman, the stipulation was part and parcel of the
guilty plea entered in the first trial. 
Carrasco=s stipulation was entered into before the first trial, and
Carrasco pleaded not guilty at that trial. 
At the commencement of the second trial, Carrasco again pleaded not
guilty.  Thus, unlike in Huseman, this case did not proceed to trial without
a plea by Carrasco.  This is an important
distinction, because the critical mistake made by the trial court in Huseman was to preclude the defendant from entering
a new plea after the declaration of mistrial.

The issue we must resolve in this
case is whether a stipulation that is not part of a guilty plea remains binding
after a declaration of mistrial.  Huseman does not address this issue, and we have not
found any Texas cases that do.  We will
therefore turn to the law of other jurisdictions for guidance.

Effect of Stipulation at Subsequent
Trial








We have previously defined Astipulation@ as Aan agreement, admission, or
concession made in a judicial proceeding by the parties or their attorneys,
respecting some matter incident thereto.@ 
Nat=l
Union Fire Ins. Co. v. Martinez, 800 S.W.2d 331, 334 (Tex. App.--El Paso
1990, no writ).  Wigmore provides a definition that accurately describes the
stipulation at issue in this case:  AAn express waiver made in court or
preparatory to trial by the party or his attorney conceding for the purposes of
the trial the truth of some alleged fact . . . .@ 
9 John Henry Wigmore, Evidence in Trials at Common Law ' 2588 (James H. Chadbourn rev., 1981).  Wigmore prefers to
use the term Ajudicial admission@ instead of  Astipulation.@ 
See id.








There is some disagreement among
jurisdictions regarding whether a stipulation entered into at one trial is
admissible at a subsequent trial of the same case.  See id. ' 2593.  According to Wigmore,
the Aorthodox English practice@ clearly allowed it.  Id. 
We have found dicta in one early Texas decision that is in accord
with this practice.  See Lee v.
Wharton, 11 Tex. 61, 1853 WL 4404, at *8 (1853) (special court) (indicating
that a stipulation is admissible in a subsequent trial unless the stipulation
states that it is intended to be used only at a single term of court).  From our review of the cases, it appears that
the weight of modern authority from other jurisdictions is also in accord.  See, e.g., United States
v. Marino, 617 F.2d 76, 82 (5th Cir. 1980); Gonzales v. Pacific
Greyhound Lines, 214 P.2d 809, 812-13 (Cal. 1950); Atlas Life Ins. Co.
v. Unger, 177 P.2d 98, 102 (Okla. 1947); Sovereign Camp, W.O.W. v. Jones,
178 So. 891, 891 (Ala. 1938).  But see Paine v. Chicago & N.W. Ry. Co., 258 N.W. 846, 848 (Wis. 1935) (stating that
when a stipulation was made to save time because a party was confident of
success on another point, the stipulation is not binding at a future trial); Rigdon v. More, 89 N.E. 992, 993 (Ill. 1909)
(stating that a stipulation of facts is not admissible at a second trial over
the objection of either party).

The Marino case has a
procedural posture similar to this case. 
See 617 F.2d at 82.  A defendant entered into a stipulation
regarding another offense he committed. 
The first trial resulted in a mistrial, and the defendant argued that
the stipulation was inadmissible at the second trial.  The court rejected this argument.  Id.

Sound policy reasons support the
result in Marino.  As stated by Wigmore:

[A]fter the case of the party benefitting
by the admission has been exposed at the first trial, the party making the
admission may discover that the proof of the fact would have been difficult or
onerous, and by withdrawing the admission he may thus obtain a factitious
advantage which the law hardly contemplates as the consequence of a new
trial.  Moreover, the ignorance which may
have led to an ill-advised admission is no more a cause for revoking it at the
second trial than at the first; and in any event the judge=s discretion may grant relief . . . in the one
instance as well as the other.  It would
seem, having regard to the voluntary and contractual nature of the act, that
the duration of its effect, no less than its scope, depends after all on the
intent of the parties; that this implied intent may vary with the
circumstances; and that where no special circumstances indicate the contrary,
the intention should be implied to extend the effect of the admission to all subsequent
parts of substantially the same litigation between the same parties, including
a new trial . . . .

 

Wigmore ' 2593.








In this case, there is nothing in the
stipulation limiting its use to the first trial.  For this reason, the trial judge was correct
in his determination that the stipulation was admissible at the second
trial.  We also note that the judge was
aware of the circumstances surrounding the stipulation because he had signed
the stipulation and had presided over the first trial.  Cf. Discovery Operating, Inc. v. Baskin,
855 S.W.2d 884, 886-87 (Tex. App.--El Paso 1993, orig. proceeding) (stating
that the intention of the parties to a stipulation must be determined from the
language used in light of the surrounding circumstances).

Discretion to Set Aside a Stipulation

Wigmore states that even though a
stipulation is generally binding on the parties, a trial court has discretion
to set aside a stipulation.  Wigmore ''
2590, 2593.  This statement is
consistent with Texas law.  See Franco v. State, 552 S.W.2d 142, 144 (Tex. Crim. App. 1977); Valero Eastex
Pipeline Co. v. Jarvis, 990 S.W.2d 852, 856 (Tex. App. --Tyler 1999, pet.
denied); New v. First Nat=l Bank,
476 S.W.2d 121, 124 (Tex. Civ. App.--El Paso 1971,
writ ref=d n.r.e.).








Franco illuminates the type of
situation in which a trial court should exercise its discretion to set aside a
stipulation.  In Franco, the
appellant and the prosecutor engaged in plea negotiations regarding the State=s motion to revoke probation.  As a result of the negotiations, the
appellant initially intended to plead true. 
At that time, he signed a boilerplate document, stipulating that the
facts in the State=s motion to revoke were true. 
By the time of the hearing on the motion to revoke, however, plea
negotiations had apparently broken down. 
The appellant entered a plea of not true and objected to admission of
the stipulation.  The trial court
overruled the objection and admitted the stipulation into evidence.  Franco, 552 S.W.2d
at 143-44.  The Court of Criminal
Appeals noted that A[s]etting aside a stipulation
ordinarily is within the discretion of the trial court.@ 
Id. at 144.  But the court concluded that the trial court Aabused its discretion in revoking
appellant=s probation . . . .@ 
Id.  The court stated, AFrom appellant=s persistence in pleading untrue, we
can only conclude that appellant signed the stipulation of evidence
involuntarily or under a mistake of fact as to the nature of the negotiated
plea-agreement.@  Id.

In Franco, it was clear that
the appellant entered into the stipulation in anticipation of pleading
true.  When the plea negotiations broke
down and the appellant decided to plead not true, he should have been relieved
of the binding effect of the stipulation. 
This case does not present similar facts.  Carrasco entered the same plea at both
trials. Considering the trial judge=s familiarity with the stipulation
and the first trial, we find nothing in the record to indicate that the judge
abused his discretion by refusing to set the stipulation aside.

Conclusion

Carrasco=s sole issue on appeal is overruled,
and the judgment of the trial court is affirmed.

SUSAN
LARSEN, Justice

November 20, 2003

 

Before Panel No. 1

Larsen, McClure, and Chew,
JJ.

 

(Publish)











[1]We
do not have a reporter=s
record from this trial, and the clerk=s
record does not contain a written declaration of mistrial, but the parties agree
that the trial resulted in a hung jury and that the judge declared a mistrial.





[2]The
State did not rely solely on the stipulation to make its case.  The State presented evidence that the victim
was Carrasco=s wife or
girlfriend, she died from a stab wound to the chest, and her body was
discovered by officials who were trying to extinguish a fire at her home.   Officials also found a can of lighter fluid
on the kitchen counter and a knife in a sink full of water and dirty
dishes.  The State presented evidence
suggesting that Carrasco stole a truck on the evening of the murder.  A boot was left at the location from which
the truck was stolen.   Officials took a
DNA sample from blood on the boot and determined that the DNA profile from the
boot was consistent with a mixture of blood from Carrasco and the victim.  Officials finally located Carrasco on foot in
the desert, about seven or eight miles from where the murder occurred.