N. W. CRAIN AND OTHERS V. A. H. CRAIN AND OTHERS.

Where a father made deeds to his son of the principal part of his estate to the exclusion of other children, who, in their petition to avoid the same, charged that they were not *bona fide* conveyances, but inofficious wills, intended to take effect after the death of the father, these deeds being declared void as in fraud of the law securing to children a portion of the parent's estate, and not for actual fraud in procuring them, are good for the one-fourth, of which the father had the right to dispose in addition to the distributive share to which such son was entitled.

Where the objection to a testamentary instrument does not go to its proof or the formalities of its execution, but to its *corpus* or substance, as being contrary to law and in violation of the rights of others, its want of probate or form cannot be insisted on.

Appeal from Nacogdoches. Tried below before Hon. A. W. O. Hicks.

This is a second appeal in this case. The Opinion of the Court upon the former appeal is to be found in 17 Tex. R. 80. Upon the return of the case of the District Court, the sole point submitted to the jury was "whether or not the transfers to appellants were valid," *i. e.*, whether they were to take effect in the life-time of the donor or at his death; or whether they were deeds in effect or wills in disguise. The jury was instructed "that if the transfers were intended to take effect in the life-time of the donor they should find for the defendant, but if to take effect at his death, they should find for the plaintiffs." All other matters essential to be determined were submitted to the Judge. The jury found for the plaintiff. Upon the return of the verdict the defendant moved the Court to allow him, by its decree, the one-fourth of the estate of his father in addition to his distributive share, which the Court refused to do, but decreed that the transfers were total nullities, &c.

*T. J. Jennings*, for appellants. The conclusion to be drawn from the discussions of the Spanish Law, and the doctrines of Courts of Equity in the decisions of this Court in "Parker v. Parker" and " Crain v. Crain " leaves but little to be said by the counsel of the appellant. The authorities cited in the latter case, while fully sustaining the conclusion to which this Court then came, are, some of them at least, equally applicable and cogent in support of appellant's present claim. We call attention especially to the cases of Hall v. Hall, (2 Vern. 277,) Turner and wife v. Jennings *et al.*, Gregor v. Kemp, (3 Swanston's R. 404.) The latter case is pointedly applicable here. Mrs. Kemp had covenanted, in consideration of marriage, to give to John Kemp, by will, a portion of her estate. It is admitted that she had the power, notwithstanding the covenant, to give it all away in her life-time, provided she parted with it outright. She made a disposition of the greater part of her estate in the form of deeds, but which the Court held to be testamentary in effect, and a fraud upon the marriage covenant. They say it was a plain fraud, and yet they held it good to the extent to which she had the power of disposition by will. This is the doctrine of this Court in Parker v. Parker and of the Spanish Law as there shown. Art. 1489, Civil Code, is a provision to the same effect in the Louisiana law, but is clearly only declarations of the Spanish law in that respect. These authorities will be found to make no difference in regard to the effect of an excessive donation upon such a right as appellant is now asserting as to whether the conveyance was in form testamentary, or deeds in form and in effect testamentary, and in being testamentary in form or effect were violative of the rights of customary heirs, of forced heirs, or of certain covenantees. It matters not as to the disposable portion whether the intention of the donors as to the residue and towards the other parties entitled were the best or the worst. No man can be heard to allege fraud against the validity of an act which he has no right to question. A

disinherison of forced heirs, by conveyances which were wills in disguise, has been urged in this case to be a fraud upon those protected heirs. Grant it; but to what extent is it a fraud redressible in a Court of Justice? to the extent to which the impeaching party has a right of complaint. There is here no fraud on the part of appellant towards his grantor, charged, proven or hinted at. The only fraud asserted is towards plaintiffs as forced heirs, and the authorities cited abundantly show that the alleged fraud only vitiates the conveyance in question to the extent that they were violative of the rights of the injured and complaining parties. In other but equivalent language, the fraud alleged does not avoid *in toto* the instruments complained of, as would be the case if it were perpetrated by one party to the instrument against the other, but only to the extent to which it violates the rights of third persons, as in the instance of a conveyance made in fraud of the rights of creditors, which, while it is void so far as it violates the rights of the persons who have a legal right to complain of it, the creditors, is yet valid and binding on the parties to it, and conveys and holds the property. This is the very analogy which the counsel for appellees sought to apply to these transfers when this case was first presented here, and it is certainly applicable now precisely, though it was only so *submodo* then. The principles on which claim of appellants rests are so well illustrated by the authorities cited, so consistent with legal analogies, and so well sustained by the jealous spirit of favor with which every known system of law regards donations by parents of the disposable portions of their estates, whether made *inter vivos* or *causa mortis*, that further discussion on the part of the appellant is deemed unnecessary.

*R. S. Walker* and *Henderson & Jones*, for appellees.

HEMPHILL, CH. J. When this cause was before this Court,

at a previous Term, on appeal from the judgment sustaining the demurrer to the petition, the main question presented on the allegations of the petition (as will appear from the Opinion in 17 Tex. R. 81) was whether the conveyances regarded as gifts from the father to his son Newell (the father retaining possession and control of the property up to the time of his death) were valid, or were in judgment of law fraudulent and void as against the plaintiffs who, with the said Newell, were forced heirs of their father Ambrose Crain, deceased. It was held that they were void and in fraud of the law securing children a portion of the parent's estate.

On remanding the cause, the parties submitted as the sole issue to the jury the validity of the conveyances, &c., specified in the petition, and that after verdict all matters to be determined should be submitted to the Judge.

The issue upon the validity of the conveyances was general in terms, but was necessarily limited to the grounds on which they were assaulted in the petition, and to the scope and extent in which they were held void in the previous decision.

The petition indeed charged fraud actual and constructive, but this was not noticed in the Opinion except to the extent of the legal fraud, if fraud it may be called in disregarding the rights of forced heirship. There could be no actual fraud in the sense in which this is reprobated by law in procuring a will. That species of fraud is based on deception practised on the testator, whereas the petition charges that the ancestor was himself the chief conspirator in this the attempt to defraud some of his children of their legal rights.

The issue, though general, was in fact limited to the question whether the conveyances were executed and delivered to take effect in the life-time of the ancestor, or whether they were to take effect in substance and actual possession and control of the property after his death.

And this was manifestly regarded by the Court below as the sole issue and upon which the Judge delivered a full, discriminating and lucid charge to the jury.

The substance of the charge was that if the gift was out and out, if there was such delivery as to vest the property wholly in the son, leaving no right in the father to the property or its rents and profits, the conveyances were valid. If not, if they were to take effect only at the death of the donor, they were invalid and passed no title to the donee.

The jury found for the plaintiffs, and the defendants claimed that the said Newell was entitled to the one-fourth of the estate, in addition to his share as heir, by virtue of the conveyances which, though not valid for the whole, were good for the one-fourth, the father having full right to dispose of this amount of his property.

The claim was rejected and there was judgment setting the conveyances wholly aside.

The parties agree that the facts charged in the petition were proved, subject to certain exceptions. That the defendants claiming as their own the disposeable fourth, the plaintiffs claiming that the question as to the fourth does not arise under the issues. It was decreed that the father did not make the conveyances under the influence of intoxicating liquors, nor was he incompetent to contract. That the conveyances were executed and delivered to Newell W. Crain, but that the delivery was formal, fictitious and intended after the death of the father, and that this statement and record is to be treated and considered only in regard to the question of law as to the one-fourth part claimed by the said Newell W. Crain, and that the evidence fully established the allegations essential to be maintained in regard to the points or invalidity of said conveyances under the decision of the Supreme Court in this case November 17th, 1856.

The errors assigned are : 1st. On decreeing the total nullity of the conveyances. 2nd. In overruling the motion of appellant to have his right to the one-fourth recognized by the decree.

I have examined with some attention the statement of the parties and there is difficulty in deciding upon the exact signi-

fication of the terms used in describing the delivery, viz : that it was formal, fictitious and intended after the death of the donor. Was that a delivery at all? or was this intended to mean that there was no delivery. In Wheelwright v. Wheelright, (2 Mass. R. 446,) it is said that a deed signed, sealed, delivered and acknowledged which is committed to a third person, as the deed of the grantor to be delivered over to the grantee on a event, is the deed of the grantor presently and the third person is a trustee of it for the grantee. In the case cited the grantor intended to have the use of the premises for life, and the deeds were to be delivered to the grantees on his death. Was there such a delivery (as in the case above) to Newell W. Crain, or was there no delivery of the deeds? This may not be very material, as, although the instrument in the case cited was treated as a deed, it is questionable whether it was not testamentary in its character, being intended to take effect after the death of the maker, and in that respect delivery would not have been essential to its operation as a will. It may have been imagined that if the property in this controversy vested in the donee to any extent in the life-time of the father, such right in the donee would tend necessarily and completely to the exclusion of the rights of the forced heirs. This position cannot be maintained. Some estate or interest may vest presently in the donee, and yet the conveyance be void as against the legitimate shares of the heirs. The rents and profits may be limited to the father for life, or the legal estate may vest in the donee with such reservations or understanding as would authorize a Court of Equity to decree a support to the donor. And if there were such condition in fact, although not valid in law or equity, yet under circumstances of this or the like character the gift would be regarded as a mere evasion and fraud of the law, and would not be sustained although the property, or some estate in it, may have vested in the donee. The right of disposition will be respected, but the gift to be valid must make the donee richer and the donor in substance and fact the poorer.

In Smith v. Fellom, (2 Atkyns, 62, 377,) the question was whether a freeman of London, by assigning over some lease-hold houses to trustees for particular purposes, reserving to himself an estate for life, where the trust was not to commence till after his decease, was not guilty of a fraud upon the custom of London. The cases cited to prove it a fraud were City v. City, (2 Lev. 130 ;) Hall v. Hall, (2 Vern. 277 ;) Turner v. Jennings, (2 Vern. 612 ;) Cottenell v. Cottenell at the Rolls, 1736. When the case was before the Master of the Rolls he said the case 2 Lev., 130, was stronger than the present, because there the possession was delivered pursuant to the assignment, here possession was kept and the rents constantly received by the assignor. The Lord Chancellor was of opinion that the case was a plain fraud upon the custom and decreed the deed to be cancelled. A part of the agreed statement is that the evidence established the allegations essential to be maintained in regard to the points of invalidity of the conveyances under the decision of the Supreme Court in this case.

The sole ground upon which the instruments were adjudged invalid as deeds *in presenti* was the possession and control of the property, by the father during his life, the intention being that the property should substantially vest in the donee only after his death.

That this was but an evasion of the Statute of Wills, and as such could not defeat the rights of heirs under the law.

The effect of the decision was that these gifts, which in benefit and substance were not to be enjoyed during the life of the donor, could not prejudice the forced heirs to their legitimate shares, and the only question by the agreement of the parties which is to be presented for the decision is, whether the donee is entitled by virtue of the dispositions to one-fourth of the estate.

Of this, we think, there can be no doubt. The power of the deceased over the one-fourth of his estate was plenary,

was absolute, not to be defeated by any circumstances whatever, at least none such as are stated in this case. He had the unqualified power of giving away the whole of his property in his lifetime, provided there was a total surrender, or, in other words, that the gift was not characterized by any of these circumstances, which by previous decisions have been held as stamping it as a mere subterfuge and evasion. His power over the fourth by gifts, to take affect after his death, was as complete as his power to sell the whole by *bona fide* sales during his life. The Statute, in the 15th Section, not only gives the power, but inhibits any construction by which such power would be prevented. (Parker v. Parker, 10 Tex. R. 87.)

It is true that the Statute gives the power, by will or donation, in last sickness.

But the instruments, in this case, can be regarded in no other light than as testamentary in their nature, that is to take effect after the death of the maker.

It is expressly averred and charged in the petition that the deeds were drawn with the full understanding and intention between the parties, that they should have no effect or operation during the life of the testator, but to all intents and purposes were to have effect and operation as between them of a will, or of deeds to defraud the rights of the petitioners in contemplation of death.

The substance of the petition, in relation to the instruments, is, that they were not *bona fide* conveyances, but were inofficious wills in disguise, and as such were void. As inofficious wills, as instruments designed, substantially to have the effect of wills, they are not totally void. The parent had the right to dispose of the one-fourth, and amidst the charges of nullity and fraud, with which the petition bristles from the beginning to the end, it is very evident that the maker of the instruments was not deceived or entrapped. That he disposed of his property to his son, Newell, with deliberate purpose and intention.

The rule that we have adopted from other systems as applicable to excessive wills or donations, does complete justice. If the testator intended to do the act he has done, it makes no difference whether he acted in ignorance or with the purpose of disposing of more of his estate than is allowed by the law. The effect is same. The excess is reduced, and the bequest made good for the disposable portion.

But it is now objected for the first time that if these instruments were testamentary in their nature, they must be probated in the County Court before anything can be claimed under them as wills.

This objection comes too late. The gist of this controversy, the issue has been, were the instruments deeds, or in the the nature of wills ; and if they were in the nature of wills, the objection was to the substance of the bequests, as derogating from the rights of others to a part of the succession. The objection to them as testamentary instruments was not that they were not probated, or not executed in the mode prescribed by the Statute, it was not to their proof or formalities, but to their *corpus* and substance as being contrary to law, and in violation of the rights of others, and therefore void.

The pleadings in this cause were not as full as they should have been. The plaintiffs, if they intended to object to the instruments as wanting in proof, or the formalities of wills, should have stated this in the petition. And the defendant, if he intended to claim the one-fourth, should have set it up in his answer. But this was a cause of the first impression. The questions had not been previously raised, and the parties went into the contest for a full triumph or a clear defeat. The defendants, it is very probable supposed at first that if the instruments were not deeds presently, they would have no rights, and the plaintiffs, if the deeds were but wills or in the nature of wills, they were utterly void for their inofficiousness.

The progress of the decisions has shown that the parties were mistaken in their views.

Crain v. Crain.

Several of these instruments have the number of witnesses prescribed for wills, and could doubtless be established as such. But that is not the point here.

The controversy has been to establish whether they were in the nature of wills or not; and it having been decided that they did not take effect as present deeds, they must be taken to be what the plaintiff declared, they were, viz: to have the effect and operation of wills, and as such the appellant, Newell W. Crain, is entitled to claim under them the one-fourth in addition to his share as one of the distributees of the estate.

There was error in not allowing for this fourth in the judgment, and the judgment must, to that extent, be reformed, and in all other respets affirmed.

Judgment affirmed.