Becton v. Alexander.

W. J. Becton and others v. C. B. Alexander and others.

Where forced heirs sought, by suit in the District Court, to set aside the will made, and to recover property alienated by their ancestor in fraud of their rights, and charged the executors of the will with colluding and combining with the adverse claimants; *held,* in accordance with numerous former adjudications of this court, that the suit was well brought in the District Court, the County Court being powerless to grant full and adequate relief in such a case.

An amended petition which only supplied defective averments and amplified the facts constituting the cause of action, could not be treated as setting up a new cause of action so as to admit a defence of the statute of limitations which was not available against the original petition.

In a suit of this character, it was not incumbent on the plaintiffs to specify the nature or evidence of the claim under which the defendants held the property in dispute; and when the defendants set up such claim in their defence, the plaintiffs, by averring its invalidity and praying appropriate relief against it, can not be held to have departed from their original complaint.

In this case deeds of gift, made before the repeal of the law of forced heirship, and for the purpose of avoiding that law, were *held,* in deference to precedents, to be valid to the extent of the interest which the donor might devise; but Mr. Justice Moore intimates that if it were an open question, such conveyances should be held void *in toto.*

The fact that some of the plaintiffs were *femes covert* and others infants at the commencement of their suit, would not preclude the defendants from the benefit of the statute of limitati n. Those disabilities of the plaintiffs, in order to have that effect, must have existed at the time the statute would otherwise have commenced to run.

Error from Cherokee. Tried below before the Hon. C. A. Frazer.

On the 15th of October, 1855, William J. Becton, Abner M. Green as assignee of one-half of William J. Becton's interest, Wilson R. M. Becton, and Delitha Eckford, joined by her husband, brought this suit in the District Court of Cherokee county, against Carnes B. Alexander and Charles B. Raines, executors of Frederick E. Becton, deceased, and also against several other persons who, as legatees, donees, or heirs, claimed portions or interests in the estate of said Frederick E. Becton.

The object of the suit was—1st, to set aside the will of said F. E. Becton, dated on the 20th of September, 1853, by which, to the entire exclusion of the plaintiffs and others of his lineal descendants and forced heirs, he had bequeathed to some of the defendants all of his estate except certain negroes and other property which, by deeds of gift to take effect at his death, he had conveyed to particular descendants, in the spring of 1852.  2d. To recover the property so conveyed by the deeds of gift; and to have the same, as well as the rest of the estate, partitioned and distributed among the plaintiffs and the other heirs.

Frederick E. Becton died the 22d of September, 1853, having retained up to that event possession of the property, mostly negroes, conveyed by the deeds of gift, as well as that disposed of by his will.  At his death, the donees under the deeds obtained possession of the property mentioned in those conveyances, and thenceforward claimed it absolutely, maintaining that the deeds were valid.  This property was not mentioned in the will, nor reported by the executors as part of the estate.

In their original petition, the plaintiffs did not directly charge the executors with collusion with the defendants claiming under the deeds, nor did they mention the deeds of gift, or specify the claim set up by the defendants, other than those who claimed under the will.  But the defendants having excepted to the original petition, and the donees under the deeds of gift having, in their answers, pleaded those conveyances and insisted on their validity, the plaintiffs, by amendments filed at the Fall Term, 1858, denied the validity of the deeds; charged that they were executed in fraud of the law of forced heirship, and of the rights of the plaintiffs, and prayed that they be decreed to be null and void.  They, also, in these amendments, directly charged the executors with fraud and collusion in the procurement of the will, which they charged was void in consequence of the total disinherison of these plaintiffs without legal cause.

The donees in the deeds of gift pleaded the limitation of two years, besides their other defences.

The pleadings and special facts of this case are so complicated, that an attempt to give them in detail would, in view of the opin-

ion of the court, be less satisfactory than the foregoing summary of such of them as are involved in the opinion.

At the Fall Term, 1858, a jury was waived and the cause was submitted to the court, both upon the facts and the law. The court decreed that the plaintiffs, and such of the defendants as were lineal descendants of Frederick E. Becton, were, as forced heirs, entitled to three-fourths of his estate; that the will in controversy is the will of said Becton; that the deeds of gift were testamentary in their character, and should be probated by the executors as part of the will of said Becton; that the executors should divide the estate into two unequal portions, of one-fourth and three-fourths; that said fourth be partitioned among those to whom, by said will and deeds, more of said estate is given than by law they would have been entitled to receive, "in the rates in which the same is by said will and deeds given;" that the three-fourths be divided among all of said forced heirs, share and share alike, as they would have inherited the same had their ancestor died intestate; that, inasmuch as it appeared that said F. E. Becton had made advances to his children, the County Court should ascertain the value of such advances at the time they were made; and should consider the same as parts of the estate for the purpose of partition; but that each of the heirs should hold such advances as part of their distributive shares, estimating the value of such advances as at the time they were made; and that costs of suit be paid out of the estate, &c.

The plaintiffs moved for a new trial, on the ground that the court erred in directing the County Court to ascertain advancements, &c., and in sending the cause to the County Court without settling the rights of the parties. The motion was overruled.

The plaintiffs prosecute their writ of error, assigning substantially the same causes as were embodied in their motion for a new trial.

The defendants also assign errors—1st, in overruling their exceptions to the plaintiffs' petition; 2nd, in holding the deeds of gift to be testamentary, and directing the probate of the same; 3d, in rendering judgment against the defendants claiming under the

---

---

deeds of gift; 4th, in rendering judgment against them on their plea of limitations; and, 5th, in not rendering a final decree.

*A. J. Hood*, for plaintiffs in error.—There are three assignments of error in the record made by these plaintiffs in error.   I propose discussing the point raised by the third first, to wit: "That portion of the judgment is especially erroneous which directs the County Court of Cherokee county pertaining to the estates of deceased persons to settle and determine the rights of the parties to this suit."   I will briefly notice this asssignment, and feel certain that it is well taken.   It involves—

1. Did the District Court have the *power* to afford the relief sought?

2. Then, admitting the *power* in the District Court, did the pleadings and evidence demand an exercise in this case of that power? or, in other words, did the District Court, under the pleadings and evidence, act legally in sending the cause to an inferior court to determine the question of advancements?

In support of the competency and *power* of the District Court, I will cite (premising first that this was an original suit,) the 10th section of art. 4 of our State constitution.   It says: "The District Court shall have original jurisdiction of *all suits*, &c., when the matter in controversy shall be valued at or amount to one hundred dollars exclusive of interest."

And the 15th section of art. 4 confers on District Courts "original jurisdiction and *control* over executors," &c.   Article 1112 Hartley's Dig., (bottom part,) regulates and recognizes this power in District Courts.   This court has several times admitted the most ample power of District Courts in this class of cases. (See Hagerty v. Hagerty, 12 vol. T. R., p. 461–2, for judgment.) A like decree to the one in the case of Hagerty v. Hagerty, was one of the main objects of this suit.   The power of the District Court being established,

3. "Did the pleading and evidence demand an exercise of that power?"

It will be seen by an inspection of the pleading of plaintiffs, that they aver that the will was made in direct contravention of

their rights as forced heirs; that it was therefore void as to three-fourths, and that the deeds of gift were made by Frederick E. Becton fraudulently, with a full knowledge of the law on the subject of forced heirs, for the express and avowed purpose of evading the law.   Plaintiffs also aver that no *delivery* of either the deeds nor of the property purporting to be conveyed by them was ever made; that the donor retained dominion and use of the property up to his death.   Plaintiffs also state that the deeds of gift are void, &c.; that all the negroes mentioned in the "deeds" (describing them,) belonged to and formed a part of the estate of said Frederick E., and that the executors utterly failed to admit, and denied that plaintiffs had any right in the estate; that the executors had failed and refused to sue the parties holding the property mentioned in the "deeds of gift;" that the executors were *in confederation* with the parties claiming and holding under the deeds, seeking to defraud and deprive plaintiffs of their rights as forced heirs; that the entire amount in the hands of the executors was held by them adversely to petitioners' rights; that the property mentioned in the "deeds of gift" was adversely claimed and held, &c.   Petitioners also averred that *all the debts* of the estate *were paid.*   Petitioners also averred their relationship and the relationship of each of the inheriting descendants of Frederick E. Becton, and prayed the court to determine what part of the estate they were entitled to, and that the court *order a distribution*, &c.   (All the parties at interest minors and all, were before the court, some by process as pointed out in Hartley's Dig., art. 814.)

The executors and other defendants joined issue, and contended for the validity of the will and "deeds of gift," and claimed under them.   It will be seen by an inspection of the testimony adduced on the trial, that the plaintiffs in error proved most positively *every averment stated above.*   Plaintiffs also proved the amount of property in the hands of the executors; the adverse possession and worth of the property named in the deeds of gift, &c.

Scarcely any mention, if any at all, is made in the pleadings of any of the defendants about advancements, except that one only defendant, to wit: Fanny Ann Dodson did plead and set up that advancements had been made to others over and above what her

branch of the family had received : (said Fanny Ann is an only child of a daughter of Frederick E., hence entitled to one-eighth of the estate, had she not received her portion.)  All her rights, however, before trial by a written agreement were settled.  She agreed to relinquish all claims in the estate on the condition that she be allowed to retain what she had.  Hence her pleadings were not in issue on the trial.  And the property in controversy in this suit, in consequence of a settlement of her rights, is to be divided into seven parts.  Then it seems clear that no one whose rights were in controversy on the trial of the cause, was making complaint about advancements, or pressing that question.

I will also mention another fact that is fully sustained by the record.  There was *not one word of evidence adduced* on the trial by any of the defendants about *advancements*.  Then, is it not incontestably true, in view of the *powers* of the District Court, the *pleadings* and the *evidence*, that the court erred in sending this cause down to an inferior court to determine the question of advancements—a question *not raised* by the *parties*, but by the court—outside of the record ?

Then, 1st.  The judgment is wrong in holding the deeds to be testamentary papers, and in ordering their probate.  What is a testamentary paper ?  Nothing but a will !  Art. 1112, Hartley's Dig., points out the manner of probate.  The court held them to be wills or testamentary papers without probate.  Then the court transcended the law in ordering their probate *before* the requisite proof was made ; it could only be done *afterwards*.

2d.  The judgment is wrong in holding the "deeds of gift" to be valid as to one-fourth.  This, as before remarked, was a *contest of title*.  And to hold the deeds of gift to be wills and valid as to one-fourth, *was a confirmation* of defendant's title as to one-fourth.

It should be remembered, that this cause was submitted to the court without the intervention of a jury.  Our statute *requires* probate of wills ; (see Hartley's Dig., 1112,) and the law is, that *no unprobated will proves title.* (See Moore, adm'r v. Lewis, 21 Ala. R., 580 ; Armstrong v. Lear, 12 Wheat. R., 169 ; Kerr v. Moore, 9 Wheat. R., 565 ; Sheppard v. Nabors, 6 Ala. R., 631.)

Hence it seems certain that the court should have given judgment against the defendants who set up the "deeds of gift" as title for the respective slaves that the deeds purport to convey, or in default, the full price of each of them as proven. This case is unlike the case of Crain v. Crain, 17 T. R., 80; and Crain v. Crain, decided here at last term, in this: In this case the proof is positive that there was no delivery to the donees of either the deeds nor the slaves. This seems to be a contest purely of title, and the plaintiffs in this case, unlike the plaintiffs in the case of Crain v. Crain, *do not admit* that the deeds were testamentary, and hence proof is not dispensed with.

*Donley & Anderson,* for the defendants in error.—The defendants excepted to the petition, and it was stated as special ground for demurrer, that the plaintiffs have no right to sue for and recover property of said estate which is in the hands of third parties; that such suit can only be maintained by the executors of F. E. Becton.

We think the exceptions are well taken, and should have been sustained, so far as was sought by the suit to recover property not embraced in the will of F. E. Becton, or was in some way attempted to be conveyed by him.

If the negro slaves here claimed by the defendants, were, as is alleged, the property of the estate of the said F. E. Becton, we submit that plaintiffs had no cause of action as against these defendants, to recover the slaves. It is alleged in plaintiff's petition, that there were at that time acting executors of the said F. E. Becton; and we submit that they only can sue. (Evans v. Oakley, 2 Texas R., p. 182; Moore v. Morse, 2 T. R., 400.)

It is true in these cases and cases since decided, (McIntire v. Chappell, 4 T., 187, and Lacy v. Williams, 8 T., 182,) it is said there may be exceptions to the rule. But we submit that the facts alleged in this case, do not bring it within the exception to the rule. If the property belonging to the estate was wrongfully held by a party not legally entitled to it, the executor was, we submit, the party who must sue. If the executors failed to inventory property which in fact belonged to the estate, upon application to the

court in which the administration was pending, an additional inventory would be required. (Oldham & White's Dig., Art. 742.) We submit there is no fact alleged, taking this case out of the general rule, and authorizing the heirs to sue for the property not disposed of by F. E. Becton; and as to this portion of the petition, the exceptions of the defendants both general and special, should have been sustained.

The plaintiffs do not by any pleading, have reference to any of the deeds of gift until in their amendment of October 2, 1858.

If plaintiffs in error can maintain any action against these defendants for the negroes here by them claimed, and if they might at any time have instituted suit to annul and set aside the deeds of gift under which the defendants claim the negro slaves mentioned in their answers, we think the pleadings in the cause show that no attempt was made to annul said deed of gift, until the 2d of October, 1858, or at least until the 21st of September, 1858. To the original and all the amended petitions, the defendants plead, and rely upon the statute of limitation of two and four years. The statute of two years is believed by defendants to protect them in possession of the property. That they derive title to the property by virtue of deed of gift, does not prevent the statute of limitation operating in their favor. (See Thompson v. Thompson, 12 Texas R., 327.) If the possession of the defendants is adverse, and we submit that the evidence clearly shows it to be so, the property had been in possession of the parties a length of time sufficient to give defendants title. (Angell on Limitation, sec. 380–381.) An adverse possession for the time limited by statute, confers a right. (Angell on Lim., sec. 383.) Again, the executors, as to the property not specifically disposed of by the will, must be held as acting for the heirs; the title may be vested in them, but the right of action is in the executors; if they neglect to sue for more than two years after their appointment, and after a right of action had accrued to them as executors, are they not barred by limitation, and also the heirs who must claim or derive possession to the property through them? (Bartlett v. Coke, 9 Texas, 471.)

MOORE, J.—The court did not err in overruling the exceptions

to the plaintiffs' petition. The allegations of the plaintiffs unquestionably present a case in which they are not only entitled to invoke the jurisdiction of the District Court, but as to which the County Court was powerless to grant them full and adequate relief. Although their original petition does not, in express terms, charge a collusion and combination between the executors and the other defendants, who are charged to have taken into their possession, under the assertion of a claim of title, some of the negroes belonging to the estate of their ancestor, Frederick E. Becton, deceased; yet, from the facts disclosed, it is plainly inferable that the executors were cognizant of and acquiescing in the alleged title set up to these negroes by their co-defendants. Indeed, Carnes B. Alexander, one of the executors, and his wife are alleged in the original petition to claim and hold adversely to the estate two of the negroes claimed by the plaintiffs as belonging to it. But if there were any doubts as to the sufficiency of the original petition, it is, unquestionably, removed by the amendments which bring the case clearly and fully within the rule laid down in former decisions of this court. (Crain v. Crain, 11 Tex., 80; Purvis v. Sherrod, 12 Tex., 140; Smith v. Smith, 11 Tex., 102; Newson v. Chrisman, 9 Tex., 113; Francis v. Northcote, 6 Tex., 185; Dolin v. Bryan, 5 Tex., 276; Long v. Wortham, 4 Tex., 381; Thomas v. Hill, 3 Tex., 270, Chevalier v. Wilson, 1 Tex., 161.) The testimony undeniably tends to prove that the executors must have been fully informed of, and were willing to recognize and sanction the adverse claim to the property by their co-defendants.

It is ingeniously, but we think incorrectly, insisted by the defendants' counsel that the proper averments were not made until the filing of their amended petition in 1858, to authorize the plaintiffs to maintain a suit directly in their own name in the District Court, and therefore, it should be treated as a new suit brought at that time. But the amended petition does not set up a different cause of action from that relied upon in the original petition; it only cures and supplies insufficient and defective averments setting forth their cause of action; more fully enlarging and presenting the facts and circumstances connected with it, for the more definite perception and determination of the issues involved in it. The

ground of action upon which the plaintiffs base their suit, is the superior title of the heirs of Frederick E. Becton, deceased, to the negroes in dispute, and the adverse claim and possession of them by the defendants. (We say nothing about that branch of the case growing directly out of the will, as there seems to be no controversy here about it.) The mere evidence, or claim of right upon which the defendants relied to maintain their title, may have been unknown to the plaintiffs when bringing their suit, or, if known, need not have been stated; and when presented as a ground of defence, allegations of its invalidity, with an appropriate prayer for judgment upon this hypothesis, cannot be regarded either as a departure from the original cause of action, or the presentation of a new one.

It cannot be disputed that the instruments upon which the defendants rely to establish their title, were made and intended as mere shifts and contrivances in fraud of the law, to deprive the plaintiffs of the rights secured to them by the statute of wills, and that effect can be given to them only to the extent of the disposable interest of the pretended grantor in his estate. (Crain v. Crain, 17 Tex., 80; S. C., 21 Tex., 790.) And if the judgment was otherwise unobjectionable, there would, perhaps, be no cause of complaint with the decree of the court below directing their probate as a part of the will of said Frederick E. Becton, deceased, and the distribution of his estate on the basis of a proportional deduction from the bequests to each of the different legatees. (Though, if the question were an open one, I confess that, in my opinion, having been made for the fraudulent purpose of evading the law, the sounder principle would be to hold them entirely void.)

But the judgment must be reversed for the ruling of the court against some of the defendants, who made out their title under the statute of limitations by an adverse possession of two years before the commencement of the suit. The admissions of the plaintiffs clearly show that some of them had been holding the negroes, for which they are sued, for more than that time, under an absolute claim of ownership adversely to the heirs and legal representatives of Frederick E. Becton, deceased. It cannot properly be

said against them, that the instruments by which they claim are testamentary in their character, and their title was, therefore, in recognition of and subordination to the superior right of the personal representatives of the estate of said Frederick E. Becton, deceased, for the purposes of its due administration. This was not the nature or character of the title by which they assumed and claimed to hold. It purported and was maintained by them to be adverse to, and independent of the representatives and heirs of said estate. That some of the plaintiffs were *femes covert* and infants at the commencement of their suit, does not deprive the defendants of the benefit of their limitation; to do so, their disability must have preceded the commencement of the running of the statute. This was neither alleged nor proved. The court, however, seems to have regarded the statute of limitations as inapplicable to the case, and this may, probably, have misled the parties. We think, therefore, although a jury was waived and the entire case, as well on the facts as law, was submitted to the court, that a final judgment should not be pronounced in it by this court.

The judgment is reversed and the cause remanded.

Reversed and remanded.