[Opinion delivered June 21, 1880.]

---

## A. H. RIPPETOE v. THOMAS DWYER.

### (Case No. 4040.)

1. PLEADINGS — AMENDMENT — LIMITATION.— Where a mistake in the mode of pleading the plaintiff's case, as to the form in which the allegations shall appear of record, is susceptible of amendment, the amendment relates back to the filing of the original petition, and is not a setting up of a new cause of action against which the statute of limitation would run to the time of filing such amendment. Connolly v. Hammond, 51 Tex., 647; Killebrew v. Stockdale, 51 Tex., 531; Tarkinton v. Broussard, id., 554; Scoby v. Sweatt, 28 Tex., 529; Becton v. Alexander, 27 Tex., 659; Thouvenin v. Lea, 26 Tex., 614; Wells v. Fairbanks, 5 Tex., 582.

2. SHERIFF'S DEED — RECITALS IN.— The recitals in a sheriff's deed that a particular interest in land had been levied on and sold will not conclude the purchaser at the sheriff's sale from showing, by the process under which the sale was made and the decree of foreclosure, that a sale of an interest other than that recited in the deed was actually offered for sale and sold, and that the purchaser became entitled to what he actually bought, although additional to that described in the deed as having been levied on.

3. EVIDENCE — RECITALS IN SHERIFF'S DEED — PENDENTE LITE.— The recitals in a sheriff's deed are evidence of what was sold, but they are not conclusive. The sheriff's sale conveys to the purchaser whatever of title was subject to the sale as indicated in the decree

of foreclosure, and in the order of sale. It is a doctrine as old as our jurisprudence, that a purchaser *pendente lite* takes only such title as his vendor could give; takes subject to the result of the pending legal proceedings. Briscoe v. Bronaugh, 1 Tex., 333; Lee v. Salinas, 15 Tex., 497; Tuttle v. Turner, 28 Tex., 773; Baird v. Trice, 51 Tex., 555.

APPEAL from Washington. Tried below before the Hon. A. S. Broaddus.

This was an action of trespass to try title brought in the usual form by appellee, Thomas Dwyer, in the district court of Washington county, on the 22d of February, 1873, against appellant, A. H. Rippetoe, and his tenant, Julius Tainschusky, to try title to part of lot 43, in the city of Brenham, in Washington county, and for rents and damages, setting up the particular title under which plaintiff claimed the lot.

The defendant pleaded not guilty. On a former trial judgment was rendered for plaintiff. The case was appealed. It is reported in 49 Tex., 498. In the opinion is given a statement of the principal facts (pp. 503, 504).

January 13, 1879, the plaintiff amended his petition in the nature of a supplemental petition, alleging that the judgments under which the defendant held the lots were obtained by fraud, and that the sale by the sheriff under the said judgments, and Rippetoe's purchase, was fraudulent. The amended petition alleged specifically the facts which had been introduced in evidence in rebuttal to the defense on the former trial.

September 3, 1879, the defendant excepted to the petition as amended, because setting up a new cause of action which was barred by limitation, and because attempting to destroy a judgment by collateral attack, etc.

The defendant, further amending, pleaded specially his defense. The foreclosure suit began February 29, 1860, by Testard v. W. B. Presley, to foreclose a vendor's lien upon certain town lots (among them the lot in controversy), judgment, appeal and reversal. On return of mandate 18th February, 1867, making Perryman a party defendant, final judgment

for $326.91, and decree ordering sale of the lots, rendered October 17, 1870. Also another suit by Harris, executor of Key, March 11, 1868, against Presley and Perryman on another purchase money note, part of same purchase, asking decree for foreclosure. Decree October 24, 1870.

. That pending the first said foreclosure suit, February 19, 1861, Presley sold a part of the lots included in said proceedings, and that defendant became purchaser and subsequently sold it, giving warranty deed, said property subsequently coming into the hands of Phlugart and Perryman. That for the purpose of protecting himself, the said Phlugart on April 16, 1870, bought said notes sued on, with the understanding that the suits should be prosecuted in names of the original plaintiffs, he to control them. Subsequently defendant bought a two-thirds interest in said notes for purpose of protecting himself; that the owners of the other parts of the lots secured by said vendor's lien refused to aid defendant in discharging said lien. That November 28 and 29, 1870, the district clerk issued executions and orders of sale respectively on said judgments, under which, and at sheriff's sale regularly made, defendant bought said lots at $100, which, from the condition of title and of adverse claims, was as much as their value.

And further, as to the acts relied on by the plaintiff as fraudulent, the defendant pleaded the statute of limitation of two years; also limitation of the lot for three and five years under the conditions of statute of limitations before the amended petition was filed.

September 4, 1879, plaintiff by supplemental petition alleged that under his original purchase he had had possession of the lot sued for down to the time of his eviction by Rippetoe, and in good faith had erected thereon valuable improvements worth $5,000; that said entry by defendant was obtained partly by force and partly by fraud and collusion with plaintiff's tenants. . . That at the time of said illegal entry plaintiff was not aware of the claim of right under which defendant afterwards claimed. The defense in the suit was only the plea of *not guilty*, and that plaintiff

did not learn nor have opportunity to learn the same until the former trial, had September 16, 1874, when the defendant's said title appeared in evidence; that on said trial a verdict and judgment were rendered for plaintiff for the premises, besides a money judgment for rents; that defendant took an appeal, which remained undecided until May 14, 1878, when the judgment was reversed and the cause remanded for further proceedings. Mandate issued December 24, 1878; that upon said trial September 16, 1874, it appeared that the defendant claimed under a purchase by him made January 3, 1871, under the said decrees, orders and executions. . . "And plaintiff now here having an opportunity for the first time since the defendant's said title and claim first came to his knowledge, shows unto the court," etc.; alleging that the judgment in the case of Harris, Administratrix of Key, v. Presley *et al.*, was not conclusive as to the rights of plaintiff, suit having been brought in 1868, long after plaintiff's purchase, and after he had possession, and to which plaintiff was not made a party, etc.; that plaintiff had had possession from March 16. 1861, until after said sale, and had no notice of the suit by Testard, Plaintiff, v. Presley. . . . That the said sheriff's sale and the purchase by Rippetoe, and all anterior proceedings thereto, were fictitious, fraudulent and void as against plaintiff. . . That the purchase was made in furtherance of a conspiracy between defendant and others to use said proceedings for the purpose of sacrificing the rights of plaintiff and others under the forms of law, by using the note actually paid off as a bribe for selling, etc. . . . That both of said debts had been paid off before the rendition, which Rippetoe well knew, while he, with others named, fraudulently obtained and used the judgment, etc.

That the doctrine of *lis pendens* and of privity ought not to apply, because of the gross laches of the plaintiff in said suit in not prosecuting it to judgment, to all of which Rippetoe was party and privy, etc.

The exceptions of the defendant to the amended petition were overruled.

A synopsis of the material facts in the case, extracted from the brief of appellant, is as follows:

1. Deed from Presley to Jennings, dated February 19, 1861, for that part of lot 43 in controversy in this suit.

2. Deed from Jennings to Dwyer, dated March 16, 1861, for the same lot.

3. Deed from the sheriff to Rippetoe, dated January 5, 1871, for lot 43 and part of lot 90.

4. Parol testimony that Dwyer and those under whom he claims had possession of the lot in controversy from the time of their purchase of Presley till January 6, 1871, when Rippetoe took possession.

5. That Rippetoe at one time owned the northeast corner of lot 43, under mesne conveyances from Presley, and was a remote vendor and warrantor of Perryman.

6. That prior to the 17th and 24th days of October, 1870, Presley had sold all parts of lots 43 and 90 purchased by him of Browning, and that Perryman had no interest in either, except said northeast corner of lot 43 claimed through Rippetoe, as his remote warrantor.

7. That pending said two suits, and before the rendition of said judgments, Rippetoe purchased the notes in said suits, paying the plaintiffs the full amounts of their respective demands, with the understanding and agreement that the suits might be prosecuted to judgment in name of the original plaintiffs for the use and benefit of Rippetoe, who assumed all liability for costs in said suits.

In this connection it was made to appear, on the part of defendant Rippetoe, that his principal object in purchasing said notes and in making said stipulations was to protect himself and his vendee from loss by reason of said suits.

The defendant Rippetoe's evidence of title as shown by the record was:

1. Deed from Browning to Presley for lot 43 and part of 90, dated February 19, 1859, recorded June 18, 1859, and reciting that the notes sued on were given for balance of unpaid purchase money.

2. On the 29th February, 1860, A. Testard, as assignee of

one of said notes for the use of Lowery, instituted suit thereon in the district court of Washington county, praying for judgment and foreclosure of the vendor's lien on said lots 43 and 90.

3. On the 21st April, 1860, judgment with foreclosure of the vendor's lien on said lots was rendered in said suit against said Presley, who, on the 29th September, 1860, removed the cause by writ of error to the supreme court, where, on the 18th February, 1868, the cause was reversed and remanded to the district court, where, on the 17th day of October, 1870, judgment, with decree of foreclosure of the vendor's lien on said lots, was again rendered against said Presley and Perryman.

4. On the 28th November, 1870, an order of sale was issued on said judgment, and decree of foreclosure directing the sheriff to sell said lots to satisfy said judgment.

5. A similar suit was commenced on the 18th of March, 1868, by R. D. Harris, on one of said notes, against Presley and Perryman, for a like purpose as the Testard suit; proceedings and sale thereunder are precisely similar to those in the Testard suit.

6. Under the orders of sale issued on said decrees of foreclosure, the said lots were advertised for sale in accordance with law, and on the 3d day of January, 1871, as appears by the sheriff's returns on said orders of sale, said sheriff sold said *lots* at public auction, as required by law, when appellant Rippetoe bid the sum of $50 at the sale under each of said executions, which were struck off to him by the sheriff for that price, which Rippetoe paid to the sheriff.

7. Rippetoe, in his own behalf, stated that the *lots* were sold by the sheriff under said orders of sale in the usual way such sales are made; that he bid $50 for the lots under each of said orders of sale; that the lots were struck off to him for that price, under each sale, which amount he paid to the sheriff.

8. It further appears from the record, as shown by Rippetoe, that the Testard suit to foreclose the vendor's lien on said lots 43 and 90 was filed 29th February, 1860, and was

pending from that time till the decree of foreclosure was rendered 17th October, 1870; and that during the pending of this suit, to wit, on the 19th February, 1861, about a year after the suit was filed, Presley sold the lot in controversy to said Jennings, who, on the 16th March, 1861, thereafter sold and conveyed the same to appellee Dwyer.

Verdict and judgment were rendered for the plaintiffs for the lot and for $2,083 rents.

Motion for new trial was overruled, and defendant appealed.

The errors relied upon and discussed relate to the overruling of the exceptions to the amended and supplemental petitions; chiefly because a new cause was set up therein, barred by limitation.

Refusing instructions asked by the defendant; chiefly refusal to charge that Dwyer, the plaintiff, was bound by the foreclosure decree if a purchaser *pendente lite.*

And in its charge given to the jury in instructing them substantially:

"That it appeared from record evidence that on the 17th and 24th days of October, 1871 (the dates of the rendition of the judgments), the said Presley and Perryman had no interest in the lot in controversy, and that the sheriff's deed purporting to convey only such interest as they then had in said lot, defendant Rippetoe took no title, by his purchase, to said lot."

In the disposition of the assignments which may be noticed, such additional facts will be given as are deemed necessary to their proper explanation.

*Breedlove & Ewing* and *T. W. Morris,* for appellant.

*Sayles & Bassett,* for appellee.

A. S. WALKER, J.—The second and third errors relate to the law of limitations as applied to the plaintiff's case as made in his pleadings.

It is insisted (1) the attack upon the title of appellant, Rippetoe, on the ground of fraud, presented a new and dis-

tinct cause from that set up in the original petition, which appeared to be barred when the amendment was filed; and (2) in cases of fraud, limitation begins to run from the discovery of the fraud, or from such time as it might, by due diligence, have been discovered; and that these principles apply to and avoid the effect of the facts as a replication, against the title pleaded by the defendant.

The object of the suit was the recovery of the lot. The cause of action is the alleged unlawful taking and holding possession of it. The original petition sufficiently indicated this cause of action. The defendant only pleaded not guilty, but he introduced as a defense the sheriff's deed and foreclosure proceedings, orders of sale, etc.; to this the plaintiff, on the former trial, replied by introducing testimony to facts constituting, as was insisted, *fraud*, such as would avoid the sale. This right on appeal the court held was only to be allowed as *pleading the facts*. By amendment *they* were pleaded. They were not in fact or intent a *new* cause of action, but a practical replication to the defendant's case as made by his testimony. The amendment was to correct an error in omitting to plead in detail the plaintiff's case. The facts were alleged "and offered to show fraud in the foreclosure proceedings on part of Rippetoe and his associates, culminating in the taking possession of the lot under the fictitious decree, order of sale," etc. There was no laches in asserting his rights by Dwyer. He promptly sued, is still suing for the same thing; and has only perfected the petition so as to avail himself of his case. It would be a harsh rule to require of the plaintiff perfect pleadings, under the penalty of losing the benefit of his facts upon a mistake as *to the form* in which the allegations shall appear of record. In short, that the plaintiff was on appeal held to a specific pleading of the facts avoiding the title developed in the defense under the plea of *not* guilty, will not attach to such pleading, when promptly amended so as to conform to the rule imposed by the supreme court, the taint of laches such as would result from an acquiescence in Rippetoe's taking

the property up to the time of the filing of such amendment.

While the party injured by the fraud is held, at the peril of a seeming acquiescence, to an assertion of his rights within a reasonable time, such assertion in this case is present. The suit for the property is promptly brought and vigorously prosecuted. The omission regarded as evidencing laches is at most but a mistake in the mode of pleading the plaintiff's case, in asserting the illegality of the sale from the alleged fraudulent acts of the defendant. This was susceptible of amendment, and the amendment would relate to the filing of the original petition. Connolly v. Hammond, 51 Tex., 647; Killebrew v. Stockdale, 51 Tex., 531, 532; Tarkinton v. Broussard, 51 Tex., 554, 555; Scoby v. Sweatt, 28 Tex., 713; Becton v. Alexander, 27 Tex., 659; Thouvenin v. Lea, 26 Tex., 614; Wells v. Fairbanks, 5 Tex., 582. We understand the rule of pleading to be that the statement of evidence by which an allegation is supported is not a new cause of action; the rule would not be changed upon such statement being necessary in practice to its introduction.

The seventh and eighth assignments of error relate to the one subject. A charge refused being " to the effect that a party purchasing property during the pendency of a suit, in which it is the subject of litigation, will be bound and concluded by the judgment therein, the refusal to give which is one of the grounds in the seventh assignment."

The court on same subject gave the following: "That Presley and Perryman having sold all their interest in the lot in controversy prior to the rendition of the judgment of foreclosure on the 17th day of October, 1870, and the sheriff's deed reciting that he conveyed all the interest Presley and Perryman then had in the lots sold by him, Rippetoe took no title by his purchase under the order of sale."

The facts to which the charge was intended directly to apply are substantially as follows: The sheriff's deed recites that by virtue of orders of sale issued on the decree of

foreclosure rendered on the 17th and 24th days of October, 1870 (specifying the suits), directing him to sell the *lots*, describing them, he levied upon "all the interest Presley and Perryman had in the lots on the 17th and 24th days of October, 1870," and on the first Tuesday in January, 1871, sold said *premises*, and at said sale said premises were struck off to Rippetoe for $50, under each execution, in consideration of which, and the payment of the purchase price, he conveyed to Rippetoe "all the estate, right, title and interest Presley and Perryman had in said lots on the 17th and 24th days of October, 1870, or at any time afterwards."

"To have and to hold the above decribed premises unto the said Rippetoe, as *fully and absolutely as he, as sheriff, could convey by virtue of the said writ and orders of sale.*"

In this connection the appellee submits as counter-propositions sustaining the instructions given by the court, the following:

*First.* The recitals in a deed of a sheriff as to the manner in which he executed a judgment directing the sale of property, and of the interest conveyed, are evidence against the grantee and parties claiming under him.

*Second.* The deed executed by the sheriff is the primary evidence of the contract of purchase, and of the extent of the interest acquired by the purchaser; and the legal effect of the deed cannot be changed by parol evidence of the intent of the parties thereto.

Whatever may be the general rule as to recitals, we do not see that the recital by the sheriff, that he levied on and sold a particular interest in the land, would conclude the purchaser from showing, by the process under which the sale was made and the decree of foreclosure, that a sale of an interest other than that recited in the deed was actually offered for sale and sold; and that the purchaser became entitled to what he actually bought, although additional to that as described in the recitals in the deed as having been levied upon, etc. While these recitals may be evidence, they are not conclusive. The foreclosure proceedings, the decree, order of sale and sheriff's return, were also competent evi-

dence of what was sold by the sheriff; who, in the execution of the order, was but a ministerial officer, authorized and directed to make the sale. Actual levy was unnecessary, and a mistake in it, or a misrecital as to it, could not affect any rights of the parties.

The sheriff's sale conveyed to the purchaser whatever of title was subject to the sale as indicated in the decree of foreclosure and in the order of sale. Its effect was not destroyed by the recital in the deed, or in his return as to the mode of making his levy. The decree of the court and the order of sale directed the sale of the lot; the sheriff sold it. His deed evidenced the sale as having been made. It is a doctrine old as our jurisprudence, that a purchaser *pendente lite* takes only such title as his vendor could give; takes subject to the result of the pending legal proceedings. Briscoe *v.* Bronaugh, 1 Tex., 333; Lee *v.* Salinas, 15 Tex., 497; Tuttle *v.* Turner, 28 Tex., 773; Baird *v.* Trice, 51 Tex., 555.

The charge of the court limiting the effect of the sale to the interest had by the defendants in the foreclosure suit at the time the decree was rendered was error. The defendant, by appropriate charge, asked its correction, and it was refused.

For this error in the charge of the court, the judgment should be reversed.

REVERSED AND REMANDED.