# SUPREME COURT OF TEXAS.

## DECEMBER TERM, 1849.

---

### THE STATE v. DAUGHERTY.

Where the Constitution contains a grant of jurisdiction, "with such exceptions and under such regulations as the Legislature shall make," whether the grant remains dormant until a rule is prescribed for its exercise, *quere.* But, however that may be, it is well settled that in such cases affirmative legislation, covering part of the ground included in the grant, is in effect a negative upon the exercise of any jurisdiction in that behalf not included in the legislative grant or regulation. (Note 1.)

Therefore, the Constitution of the State having conferred upon the Supreme Court appellate jurisdiction in criminal cases, "with such exceptions and under such regulations as the Legislature shall make," and the Legislature having only provided "that the *defendant* to any indictment or prosecution for any criminal offense in the District Court of this State shall have the right of appeal to the Supreme Court, it follows that the State cannot appeal in criminal cases.

The act of December 22, 1836, which authorized the judges of the District Courts to certify novel and difficult questions to the Supreme Court for decision was repealed by the act of the 13th of May, 1846, to regulate proceedings in the District Courts.

Appeal from Henderson. At the May Term, 1848, of the District Court of the county of Henderson a bill of indictment was found against the said defendant for gaming. At the May Term, 1849, of said court, when said cause was called for trial, the defendant filed a motion to quash the *venire [2] facias* and bill of indictment, on the ground that said writ by which the jurors were summoned who found said indictment had no seal attached thereto according to law, and that said writ was not signed and tested by the clerk of said court; which motion was sustained by the court, the special venire quashed, and the judgment of the court rendered that the defendant go hence without day. Whereupon the district attorney gave notice of appeal and appealed to the Supreme Court, and the court ordered the same to be certified to the Supreme Court as a novel question for their decision therein.

*Hamilton,* for appellant.

*Hyde* and *Jennings,* for appellee.

I. After the motion was sustained and the defendant adjudged to go hence without day the court had no further power in the premises, and could not reserve the same for the consideration of the Supreme Court. The act of December 22, 1836, giving this power was repealed by the act of the 13th May, 1846. Nor has the State the right of appeal in criminal cases; there is no statute giving such right; and see The State v. Soloman, (6 Yerg. R., 340,) and the authorities there referred to.

II. The indictment should have been quashed, for the reason that the *venire facias* was void, it having no seal thereto. The 8th section of the act of the 11th May, 1846, describes the seal to be procured for the clerk of the District Court, the impression of which seal must be attached to all writs and process, except subpoenas, issuing from said court; and until such seal be procured the seal formerly in use or a private seal may be used. In this case the clerk was not provided with a seal, under which circumstances his former seal, if he had one, or his private seal, was as essential as the proper seal would have been if one had been provided; and there being neither attached to said *venire facias,* it must be void and all the proceedings thereon.

1

HEMPHILL, Ch. J.  The only question in this case is whether the State has the right of appeal from a judgment of the District Court in a criminal case in favor of the defendant.

The Constitution vests in the Supreme Court appellate jurisdiction co-extensive with the limits of the State, "but in criminal cases and in appeals from interlocutory judgments, with such exceptions and under such regulations as the Legislature shall make." It will be perceived that the grant of jurisdiction over criminal cases and interlocutory judgments is not complete and unqualified, but is subject to such regulations and exceptions as may be made by law.

Whether a grant made in such terms remains dormant until a rule is prescribed for its exercise does not appear to be well settled in the decisions of the Supreme Court of the United States on a similar clause in their Constitution; at least their construction has not been uniform. Appellate jurisdiction is given to the Supreme Court of the Union, both as to law and fact, with such exceptions and under such regulations as Congress shall make. In the first case requiring an exposition of the provision (Wiscart v. Dauchy, 3 Dall. R., 326) it was held that the jurisdiction of the court could not be exercised unless Congress had provided a rule to regulate the proceedings. But in the United States v. Moore (3 Cr. R., 159) and Durousseau et al. v. United States (6 Cr. R., 307) the position was assumed as the true one that if the judicial act had created the Supreme Court without defining or limiting its jurisdiction, it must have been considered as possessing all the jurisdiction which the Constitution assigned to it, and Congress, in omitting to exercise the right of excepting from its constitutional powers, would necessarily have left those powers undiminished; that the appellate powers are not given by the judicial act, but by the Constitution. In Barry v. Mercein et al. (5 How. U. S. R., 119) the court adopted the original construction of the clause, and laid the rule down broadly that the court possesses no appellate power in any case unless conferred upon it by act of Congress; nor can it, [4] when conferred, be exercised in any other form or by any other mode than that prescribed by law. (Ewing v. Kinnard, 2 Tex. R., 163; Baillieu v. Robinson, Id., 160; Dow et al. v. Hotchkiss, 2 Tex. R., 471.) It will not be necessary to attempt to eviscerate from these really or apparently conflicting decisions the true rule of construction. In all of them it was held, in effect, that when the Congress had prescribed the rule, the courts could not depart from it, (3 Dall. R., 326;) that the Legislature of the Union in the judiciary act, must be understood as having exercised their constitutional power of making exceptions to the appellate jurisdiction of the court, and that an affirmative of the appellate powers of the court must be understood as a regulation under the Constitution prohibiting the exercise of other powers than those described. (3 Cr. R., 159; 6 Id., 307.)

The Legislature of this State has, by the act regulating appeals in criminal cases, (Laws of 1846, 330,) exercised the constitutional power vested in them to prescribe the regulations and exceptions for the exercise of appellate jurisdiction in this class of cases; and by the rules of construction deduced from the authorities the affirmative description of the powers of the court must be understood as implying a negative of the exercise of such appellate jurisdiction as is not comprehended within it.

The only inquiry then is whether the Legislature has prescribed any rule for the exercise of appellate jurisdiction in criminal cases where the appeal is taken on behalf of the State. From an examination of the statute it will be perceived that no such rule has been prescribed. The first section gives the right of appeal to the defendant. The second prescribes his duty in filing bills of exceptions that the action of the court may be revised on appeal. The third uses the indefinite term of the "party taking the appeal." But this must be construed in connection with the other provisions of the statute, and therefore used only as descriptive of the defendant. In the subsequent sections the regulations are all [5] made in reference to an appeal by the defendant, and no rule having been prescribed for the exercise of the jurisdiction

Hanks v. Thompson.

where the appeal is taken by the State, we must conclude that the Legislature intended to except such cases from the exercise of appellate jurisdiction, and that we have not competent authority for their revision or to examine them for affirmance or reversal, as the case may be.

Having no jurisdiction over the case, it will not be necessary to discuss the question raised as to the correctness of the decision or the want of the right of appeal on behalf of the State at common law.

I omitted to notice at its proper place that the question was reserved as one novel and difficult under the act of 22d December, 1836. If the provision authorizing questions of that character to be reserved could have had any force after the adoption of the Constitution of the State, it could have had no effect on the case before the court, as it was repealed by the act of the 13th May, 1846, a date anterior to that of the trial of the case.

The appeal is ordered to be dismissed, the court having no jurisdiction.

Ordered accordingly.

NOTE 1.—Although the jurisdiction of the Supreme Court in criminal cases is with such exceptions and under such regulations as the Legislature may make, yet it seems that whatever may be the interpretation of those words when they qualify other grants of authority, they cannot as used here be so construed as to make the right of appeal dependent wholly on the action of the Legislature. (Laturner v. The State, 9 T., 451; Smyrl v. The State, 40 T., 121.)

[6] HANKS v. THOMPSON, ADM'X.

Where the record recited that the plaintiff "took a nonsuit," and afterwards "that he moved the court to set aside the nonsuit taken in this case, &c., which motion was overruled, and ordered that the plaintiff pay all costs," &c., but there was no judgment that the plaintiff be nonsuited, nor that the suit be dismissed for want of prosecution: *Held*, That there was no final judgment, and that the appeal be dismissed. (Note 2.)

Appeal from San Augustine.

Special court composed of Hemphill, Chief Justice, and John E. Cravens and J. M. Ardrey, special judges.

*Allen*, for appellant.

*Jennings*, for appellee.

ARDREY, S. J. This was a suit brought by the appellant, Hanks, as the assignee of David Brown, to the Fall Term, 1841, of the District Court of San Augustine county, against Napoleon B. Thompson, as the administrator of Charlton Thompson, deceased, and against him in his own right as the purchaser with notice of several negroes sold to him by virtue of an administrator's sale made by one Burwell J. Thompson, administrator *de bonis non* of the said estate of Charlton Thompson. The petitioner prayed to be allowed to redeem the said negroes, and charged in his petition in effect that they had been mortgaged to the said Charlton Thompson during his life-time by one David Brown to secure the return of nine headright certificates for one league and labor of land each which the said Thompson had loaned the said Brown. At the Fall Term, 1841, of the District Court the defendant appears [7] and

3