## WILLIAM M. EASTLAND'S EX'OR v. JAMES S. LESTER.

Where an Act of the Legislature (Hart. Dig. Art. 2712) provided that all the volunteers captured at Mier and at Santa Fe by the Mexican forces, should be entitled to receive pay at the rate of twenty-two dollars and fifty cents per month, from the respective times of their mustering into service, until one month after the time at which the main bodies of said volunteers were released by the Mexican Government, and that it should be the duty of the Auditor and Comptroller to issue to each of said volunteers, or his heirs or representatives claiming the same, a certificate for the amount to which he was entitled under the provisions of said Act, &c., it was held, where the volunteer was dead at the date of the Act, that the amount so allowed was not assets, subject to the payment of the debts of the deceased, but passed directly to his widow and heirs.

Appeal from Fayette. Application to the County Court by the appellee, a creditor of William M. Eastland, deceased, to compel the executor of said Eastland, to return an inventory of $2273, which he had received as executor of said Eastland from the State, under the Act of February 9, 1850, for the relief of certain persons formerly prisoners of war in Mexico. (Hart. Dig. p. 819.) Eastland was dead at the passage of the

Act. The widow of Eastland and her husband intervened in the District Court; Eastland left no issue; his brother, who was not a party, resided at Bastrop. The District Court decided that the money was assets in the hands of the executor, subject to the payment of debts, and ordered an inventory thereof to be returned. Appeal by the executor.

*Sayles & Blanton*, for appellants. The object of this Act was to confer the bounty of the State upon those who had suffered in her behalf. It was a pure donation from the State, which they had no legal right to demand, however justly they might ask it from the generosity of their Government.

The terms used in the Statute are descriptive of the persons who were to be the recipients of its benefits; and the persons then in *esse*, capable of receiving, were entitled to the bounty. It was given to the volunteer, if living, and in case of his death, to his heir or representative. The term representative, in this Statute, should receive the construction uniformly given it when used in grants or wills, where it is held to mean the "next of kin." (Lang v. Blackall, 7 Ken. R. 100; 3 Ves. 146, 383, 486.)

*Webb & Harcourt*, for the appellee. Before noticing the assignment of errors, we contend that the intervenors have not appealed at all. No appeal bond was filed by them, and the appeal taken by the executor cannot cover the judgment of the Court upon the petition of intervention.

The County Court could have had no jurisdiction of the intervention, and as a consequence the District Court could not. (Baker v. Chisholm, 3 Tex. R. 157.)

The Act says that all volunteers, &c., "shall be entitled to receive pay." This word pay annuls all idea of a donation. Webster defines it to be "compensation, recompense, an equiv-"alent given for money due, goods purchased or services per-

"formed, salary or wages for services, hire." And as an example for its proper use, the same author gives: "The mer-"chant receives pay for his goods, the soldier receives pay for "his services, but the soldier of the American Revolution never "received full pay." (Webster's Unabridged Dic.) And this Act not only extends pay for services, but determines at what rate and for what time it shall be estimated. The law goes on to provide that the proper offices shall "issue to each of "said volunteers or his heirs, or representatives claiming the "same, a certificate for the amount," &c. We have heretofore, in this case, heard the position assumed that the words "heirs" and "representative," are used synonymously in this law, to mean the heirs of the volunteers alone, and that if not, the word heirs being first in position, makes the heirs first in right. In the case of Alexander v. Barfield, (6 Tex. R. 400,) your Honors decide that in no known judicial sense can the heir or next of kin of a deceased be his representative until administration is committed to him. (Also see Burrill's Law Dic. and all dictionaries, tit. REPRESENTATIVE.) The plural representatives, is used to make it applicable to the plural, volunteers. The word heirs has a perfect meaning within itself; and the Legislature would never have used the word representatives, to make another word explicit, which by the law has a meaning as well defined as any word used or defined in our law dictionaries.

The legal and moral obligation to pay this debt was in full force, and it only remained for the Government to provide the way. It may be said that the Mier Expedition was unauthorized, but we answer that the Act passed by the Government for their relief, is a full ratification of the expedition.

*F. W. Chandler*, also, for appellee.

LIPSCOMB, J. In this case, the question arises, between the heirs of the testator and his creditor, as to who is entitled to

receive the money allowed by the Government, under the Act of the Legislature of February 9th, 1850, entitled an Act for the relief of certain persons formerly prisoners of war in Mexico. (Hart. Dig. Art. 2712.) The money was received by the executor; and the question is, whether it is to be regarded as assets in his hands for the benefit of creditors, or does it belong to the legatees, to be distributed under the will, or to his heirs at law. The Court below adjudged it to be assets in the hands of the executor, for the benefit of the creditors of the testator. The controversy arises mainly on the construction of the following words in the Statute referred to, i. e.: " And it shall be the duty of the Auditor and Comptroller to " issue to each of said volunteers, his heirs or representatives " claiming the same, a certificate for the amount to which he " may be entitled, under the provisions of this Act."

It is contended that representative means the legal administrator or executor, and that all assets that an administrator or executor can claim, or that come into his hands as administrator or executor, are primarily subject to the payment of the debts of the testator or intestate, as the case may be; and further, that it cannot be insisted that it was a gratuity, because it is called pay for services, and like any other earnings for service rendered, is subject to the claims of creditors. To the first it may be replied, that the word representative in contemplation of law, frequently means the heir or the testamentary legatee. It is said, however, that this Court, in the case of Alexander v. Barfield, (6 Tex. R. 400,) gave its sanction to the term representative meaning, in law, the administrator or the testamentary executor. We cannot regard that case as sanctioning the construction for which it was invoked. That case arose under the Statute providing the mode of reviving suits where one of the parties dies pending the suit; and the term legal representative is used; (Hart. Dig. Art. 697;) and it was believed, that when taken in the connection in which it is used, the term legal representative meant administrator or

executor, and not the heir.   The words of the Statute, under
consideration, has no reference to the making of parties, and
does not qualify the word representative with the word legal,
but uses it after the word heirs.   Nor is it believed that the
money being called pay, can control the meaning.   If it was a
gratuity on the part of the State, its being called payment for
services, cannot change the character of the donation, so as to
make it a payment for services for which the party had a legal
claim against the State.   That it was a voluntary gratuity on
the part of the State is clear, from the fact that the right rests
solely on the Act passed for the relief of the persons described
therein, and did not rest upon any express or implied contract
before the services were rendered.   If it had, the Government
could have claimed no right to direct how it should be paid,
whether to the party himself, to his heirs, or to be paid for the
benefit of creditors.   But regard it as a gratuity, the State
had a right to say that the gratuity should be paid for the per-
sonal benefit of the party or his heirs.

The circumstances that invoked the voluntary gratuity of
the State, furnish strong grounds to believe that the Legisla-
ture never intended that the money, so bestowed, should ever
receive a direction that would deprive the beneficiary, if living,
or his heirs, if he was dead, of its personal enjoyment.   These
circumstances now form a part of the history of our country ;
the gallantry and long and severe suffering by close and cruel
confinement in the loathsome Mexican prisons, although fur-
nishing the sufferers with no legal claim for compensation,
made an irresistable appeal to the country's liberality, and it
is natural and more in accordance with this exercise of gene-
rosity, that the sufferer himself, and not his previous creditor,
should enjoy the liberality so bestowed.   Hence, they first di-
rected that it should be given to the party himself.   But many
had sunk under the hardships inflicted on them, and died in
Mexico, and others had been slain by the enemy.   They
therefore directed that, in such cases, the heir should receive

it; looking, no doubt, to what in fact was true, that many of those brave men had left in our midst a helpless widow and orphan children, without competent means of support. What relief for such persons, if the gratuity allowed to them furnished a fund that the creditor could take from them? The language of the Act, and the circumstances that induced it, are alike repugnant to the construction that it was designed for the creditor's benefit. We have not the aid of any judicial decisions on the question, but the practice of the United States Government is believed to be, to pay a gratuity to the party himself, or to his heirs, and not permit it to be seized by a creditor.

There was a case decided in New Orleans some years ago, that in principle was analagous to the one before us. I distinctly recollect the circumstances, but do not remember the names of the parties, and have not been able to find it reported. It was a forfeiture for the violation of the revenue laws; a large amount of money was awarded to the prosecutor, and he was greatly in debt and insolvent. His creditors endeavored to subject this fund to the payment of their demands against him, but it was ruled that being a gratuity bestowed on him, it could not be made liable for the payment of his debts. I believe it was in the United States Court, and was affirmed on appeal. I know that I am not mistaken in the circumstances of the case, nor in the decision of the Court. We are of the opinion that it was not within the intention of the Legislature, nor within a fair construction of the Act, that this fund, so voluntarily bestowed by the Legislature, was to be a fund for the benefit of previous creditors. The same rule is believed to prevail in all cases, wherever payment for personal services is to be made in the practice of the United States paying offices. The pay to the soldier or officer cannot be seized by a creditor, but is payable to the party himself, or his heir, which, we believe, would be right with us. We therefore believe the judgment of the Court below is errone-

ous, and the same is reversed, and the case is remanded to have the judgment entered in conformity with the opinion here given.

Reversed and remanded.