## POLLY ROGERS ET AL. v. W. E. KENNARD ET AL.

(Case No. 631.)

1. ADMINISTRATION.— The provisions of the statute (Pasch. Dig., art. 1400) prohibiting administration upon the estates of members of the Georgia Battalion and other volunteers from foreign countries, to any other than the next of kin, did not apply to administration on the estates of those who fell in 1836, who at the time of their decease were citizens of Texas.

2. JURISDICTION.— The action of the probate court having jurisdiction over the subject matter, in granting letters of administration, cannot be collaterally attacked.

3. BOUNTY WARRANT.— Land covered by a bounty warrant issued in 1839 by the secretary of war of the republic of Texas, to the heirs of one who fell at the storming of the Alamo, approved by the commissioner of claims, on which patent issued, became assets in the hands of an administrator. In this respect it differs from a pure donation made by the government to the heirs.

4. PRACTICE.— When an instrument of writing is upon its face so ambiguous as to forbid the court as a matter of law to declare its legal effect, its construction should be left to the jury as a matter of fact.

5. FACT CASES.— See statement of case for an instrument described, held to be a deed, and not a will.

6. BURDEN OF PROOF.— When the true meaning of an instrument of writing is from the words in which it is written ambiguous, the burthen of proof is upon him who claims a benefit under a particular construction of it, to establish its correctness.

7. ADMINISTRATION.— The general rule is, that while administration is pending on an estate, a suit for the recovery of the property of the estate should be brought by the administrator. To this rule the following exceptions exist, viz.: 1. When the administrator cannot or will not act for the protection of those beneficially interested. 2. When land adversely possessed by those claiming under the administrator, through deeds made in his individual and representative capacity, is sued for by the heirs or those claiming under them. In such case the interest of the administrator would be antagonistic to those claiming, and he could not move as a plaintiff in a suit in their behalf.

8. CASES DISCUSSED.— Chevallier v. Wilson, 1 Tex., 161, and Newson v. Chrisman, 9 Tex., 116, discussed.

9. STATUTORY CONSTRUCTION.— When the constitution confers jurisdiction "with such exceptions and under such regulations as the legislature shall make," and the legislature adopts statutory regula-

tions restricting jurisdiction, such regulation is in effect a negative on the exercise of any jurisdiction except such as is included in the statute.

10. JURISDICTION OF DISTRICT COURT IN PROBATE MATTERS.— The district courts had no power under any statute passed under sec. 15, art. V of the constitution of 1845, to order the sale of lands of an estate to pay indebtedness.

11. JURISDICTION.— Under sec. 10, art. IV of the constitution of 1845, the district courts had all the common law and chancery jurisdiction known to the courts of England not incompatible with the constitution and laws of the federal and state governments; but in no case occurring in this state has the district court, under its chancery powers, been allowed, in the exercise of original power, to order the sale of land for the payment of debts of an estate on which administration had been begun in the probate court.

APPEAL from Johnson.    Tried below before the Hon. D. M. Prendergast.

Appellants brought trespass to try title to recover 1,920 acres of land located and surveyed in 1849 by virtue of a bounty land warrant issued after the death of Eliel Melton, in 1861.    The land was patented to the heirs of Eliel Melton in 1861.

The plaintiffs in their petition set up title through an instrument executed by Tabitha Melton to her then widowed daughter, Polly Echols.    Eliel Melton, deceased, was at the time of his death a single man, leaving no children surviving him.    The defendants in support of their title averred that 1,420 acres of the land in controversy was sold under an order of the district court of Navarro county for the payment of debts, by Ethan Melton, the administrator.    That Stroud Melton became the purchaser and paid the purchase money, and that the sale was reported to the court, and duly confirmed.    The sale, under the order of court, the purchase by Stroud Melton, the payment of the purchase money, and the report of sale by the administrator, were all proven as alleged.    There was no positive evidence in the record of the confirmation of the sale by the court.    The transcript of three hundred pages shows

eighteen assignments of error, and contains evidence of many issues in the court below, which, in view of the opinion, it is not necessary to notice.

Tabitha Allen, on August 27, 1836, executed a power of attorney to Ethan Melton, then living in Alabama, to demand, receive and recover all goods, chattels and effects to which she might be entitled as heir of Eliel Melton, deceased. The power was ample and invested him with full discretionary powers.

The plaintiff introduced in evidence a certificate for 1,920 acres of land, issued from the war office of the republic of Texas, March 30, 1839, signed A. Sydney Johnson, Secretary of War, which recited that it was for service, and that E. Melton had been killed at the Alamo, and that "this is his certificate." It concluded, "And the said E. Melton, or his heirs, is entitled to hold said land, or to sell, alienate, convey and donate the same, and to exercise all ownership over it." On that certificate a patent issued to the heirs of Eliel Melton, February 19, 1861.

Plaintiffs also read in evidence a writing from Tabitha Melton to her daughter, Polly Echols, and others, Tabitha Melton being the mother of Eliel Melton, deceased. It was made in October, 1850; on its face it purports to be made for "many kind and valuable services," and for affection, and conveys all the property inherited from her son, Eliel Melton. The instrument closes with this language: "But it is understood further, that the lands, etc., given and conveyed to my daughter Polly by *this deed*, and which is an equal share with the children herein mentioned, are given and conveyed subject to the reservations and conditions: the said lands are hers for life, subject to none of her present debts or liabilities, or the use, debts or liabilities of no future or past husband, and at her death to be divided between the six children specified in *this will*, share and share alike, and to be given and divided between no other person or persons."

At the fall term, 1855, of the district court of Navarro county, certain heirs of Eliel Melton filed their petition, alleging in substance:

1st. That administration was pending on the estate of Eliel Melton.

2d. That Ethan Melton, also an heir, and the administrator, had disposed of the property of the estate in violation of law; that he had made extravagant charges and been guilty of gross negligence.

3d. That the administration had been pending sixteen years and they could not enforce a settlement of the same.

Prayer for the removal of the administration from the probate court, and for final settlement and distribution. The case, after lengthy defenses filed by the administrator, was, at the fall term, 1858, submitted to the court without a jury, and judgment being rendered for defendant, the administrator was ordered to sell enough land to pay all claims against the estate. In pursuance of this order, land was sold and report thereof made.

*Hood & McCall,* for appellants.
*Hunter & Putman,* for appellant intervenors.

*D. T. Bledsoe,* for appellees.
*Brown & Hall,* also for appellees.

[In this case, while written arguments of ability had been filed by the counsel on both sides before the adoption of the present rules, no briefs were on file, as required by existing rules, and a condensed notice would not do justice to either argument.]

BONNER, ASSOCIATE JUSTICE.— We shall confine this opinion to the leading and controlling questions in the case which have been argued by counsel.

I. Was the grant of letters of administration to Ethan Melton valid, he not having been next of kin to the deceased?

Eliel Melton, the deceased, was a citizen of Texas, and hence the provisions of the statute (Pasch. Dig., art. 1400), prohibiting administration to be granted upon the estates of members of the Georgia Battalion and other volunteers from foreign countries, to any than the next of kin, did not apply.

The probate court had jurisdiction over the subject matter and sufficient authority, under the power of attorney from Tabitha Melton, the mother and next of kin, to grant the administration to Ethan Melton, and its judgment in this particular cannot be collaterally impeached. Murchison v. White, infra.

II. Was the land in controversy assets of the estate of Eliel Melton, or was it a donation to his heirs and not subject to administration?

It does not satisfactorily appear under what law the bounty warrant for 1,920 acres of land was issued. It is, however, sufficient for the purposes of this case, to say that it was issued by the proper authority, the secretary of war; that it was, years subsequently, approved by the commissioner of claims appointed for this purpose, and was acted upon as a valid claim by both the commissioner of the general land office and the governor of the state, by the issuance of a patent thereon to the land in controversy.

It purports on its face to have been a bounty warrant in consideration of the services of Eliel Melton in the army and his fall at the Alamo, and as such is contradistinguished from a subsequent claim issued to his heirs as a donation warrant.

This bounty warrant, we must presume, was issued by virtue of some law or regulation recognizing either an express or implied contract, or pre-existing obligation on

the part of the government of Texas, to those gallant soldiers who had enlisted in her armies and had fallen in her defense, and hence under former decisions of this court became assets in the hands of the administrator. Soye *v.* McCallister, 18 Tex., 80; Soye *v.* Maverick, 18 Tex., 101; Allen *v.* Clark, 21 Tex., 404; Goldsmith *v.* Herndon, 33 Tex., 705; Marks *v.* Hill, 46 Tex., 345.

It differs from those cases where a gift has been made by the government as a pure donation, generally by special legislation. Eastland *v.* Lester, 15 Tex., 98, commented on in Soye *v.* Maverick, 18 Tex., 101; Causici *v.* La Coste, 20 Tex., 286; McKinney *v.* Brown, 51 Tex., 97.

III. Was the purported deed from Tabitha Melton to Polly Rogers *et al.*, under which the plaintiffs claim, a deed or a will?

In a proper case, where there is such ambiguity connected with an instrument as to forbid that the court, as a question of law, should construe and declare its legal effect to be either a deed or a will, this issue should be submitted to the jury as a question of fact. Ferguson *v.* Ferguson, 27 Tex., 344.

The instrument under consideration was recited in its commencement to have been an indenture, further on it is called a deed, and near the end it is styled a will.

In its general form it was a deed.

We are of opinion that the testimony adduced on the trial pertained rather to the question of its delivery as a deed, than to that of whether a deed or a will.

There were several issues submitted to the jury, this among others, upon the determination of which, in the affirmative or negative, they could find either for the plaintiffs or defendants, and we have no means of ascertaining upon which the general verdict for the defendants was based.

If it be conceded that there was sufficient ambiguity connected with the purported deed as to have authorized

the submission to the jury, whether a deed or a will, then we are of opinion that the burden of proof to show that it was a will was upon the defendants, and that, as now presented by the record, the evidence was insufficient to support the verdict, if based upon this issue.

IV. Could the plaintiffs sue for the land, pending administration upon the estate of Eliel Melton?

The court charged the jury substantially, that, if the administration was still pending, this suit should have been brought by the administrator, and that the plaintiffs could not legally have instituted or prosecuted it, and that in this event they should find for the defendants.

That this is the general rule under our probate system cannot be questioned either upon principle or authority.

There are, however, exceptions to this general rule also well established.

In Crain v. Crain, where a similar question was before the court, it is said:

"As to the other ground, that the action is premature, the succession not being closed, it is only necessary to say that the administratrix is a trustee, acting for the benefit of creditors and distributees, and that in cases where she will not or cannot act for the protection and preservation of the estate, the *cestui qui trusts* have a right to act in the behalf and for the protection of their eventual interests, and that such rights are the proper subject of judicial cognizance." 17 Tex., 87.

It is said in Patton v. Gregory that there are exceptions to this general rule as well established as the rule itself. That the exceptions against the heirs, as improper parties, have not been sustained in any except the two cases reported in volume second, Texas reports, and that from the tendency of the decisions such exceptions do not seem to have been favored. 21 Tex., 517; Evans v. Oakley, 2 Tex., 184; Morse v. Morse, 2 Tex., 402; Blakey v. Duncan, 4 Tex., 184; Easterling v. Blythe, 7 Tex., 211; Lacy v.

Williams, 8 Tex., 182; Bufford v. Holliman, 10 Tex., 560; Clay v. Clay, 13 Tex., 201; Cochrane v. Thompson, 18 Tex., 652; Geddings v. Steele, 28 Tex., 748.

In this case the defendants were in possession of 1,420 acres of the land sued for, claiming under deeds from the administrator himself, made both in his representative and individual capacity, and hence the interest of the administrator was directly antagonistic to that of plaintiffs, and he could not with any consistency have instituted the suit in their behalf. Besides this, several years had intervened since the administrator had taken any step whatever in the administration, and in the meanwhile the land had been in the adverse possession of the defendants.

It would seem that such case as this would clearly come within the exceptions to the general rule, and we are of opinion that the court erred in the charge to the jury under this issue.

V. By far the most important question in the case relates to the power of the district court of Navarro county to order the sale of the 1,420 acres, part of the land in controversy.

Its importance is a sufficient excuse to justify us, in attempting its proper solution, to briefly review the provision of the constitution and the laws then in force, applicable to the question, and the decisions of this court pertaining to the same.

It was the evident intention of the framers of the constitution of 1845, that, as a general rule, original jurisdiction over executors, administrators and guardians, and over the administration of estates, should be confided to the probate courts.

This jurisdiction, however, was not entirely final or exclusive, as both original and appellate jurisdiction and general control was given to the district courts over the probate courts, and also limited original jurisdiction and control over executors, administrators and guardians, the

latter to be exercised "under such regulations as may be prescribed by law." Const. 1845, art. IV, sec. 15.

Although in the case of Chevallier *v.* Wilson, 1 Tex., 178, in commenting upon this limited probate jurisdiction, it is said that "the grant of jurisdiction is complete, subject to legislative regulation, and is certainly not impaired because these regulations have not been made," yet in the subsequent case of Newsom *v.* Chrisman, 9 Tex., 116, it is said that the above case of Chevallier *v.* Wilson rested upon its own peculiar features, and that it neither repudiated nor affirmed the exercise under that section of original jurisdiction by the district court. That the legislation under this section 15 of the constitution was not explicit, and that it was doubtful whether the object of the constitution had been carried into effect.

It is also in the above case of Newsom *v.* Wilson, impliedly at least, admitted that the jurisdiction of the district court in Long *v.* Wortham, 4 Tex., 381, should have been placed upon section 10, instead of section 15, art. IV, Const. 1845.

In The State *v.* Daugherty, it is decided that it is well settled, that where the constitution contains a grant of jurisdiction, "with such exceptions and under such regulations as the legislature shall make," that affirmative legislation covering a part of the ground included in the grant, is, in effect, a negative upon the exercise of any jurisdiction in that behalf, not included in the legislative grant or regulation. 5 Tex., 1; Robinson *v.* Baillieul, 2 Tex., 161; Ewing *v.* Kinnard, 2 Tex., 164; Wiscart *v.* Dauchy, 3 Dallas, 326; Barry *v.* Mercein, 5 How., 119.

By section 3, district court act, 1846 (Hart. Dig., art. 642; Pasch. Dig., art. 1406), passed under this 15th section, art. IV, it was provided that the district court shall have and exercise    .    .    .    "original jurisdiction in probate matters, only in cases where the judge or clerk of probate is interested."

By section 121, probate act, 1848 (Pasch. Dig., art. 1382),

any one interested in the estate of a deceased person could at any time within two years after the settlement by the probate court of any account of an executor or administrator, have the same revised and corrected in the district court for error or fraud, by filing, as seems to have been done in this case, with the clerk of that court, a petition for this purpose, together with a transcript from the probate court of the papers relating to such account or settlement.

This last act would seem also to have been intended as a legislative enactment to confer original jurisdiction under the above section 15 in probate matters, upon the district courts.

It does not appear from the transcript of the proceedings in the probate court of Navarro county, in evidence, that it had approved the account of Ethan Melton, the administrator, which was complained of by the petition in the district court; but if it be conceded that this had been done, and that under the above section 121, probate act, 1848, the district court had jurisdiction to revise and correct the account of the administrator, still that act did not give that court power to order the sale of the land of the estate for its payment.

We are not aware of any statute which gave to the district court, in the exercise of its probate jurisdiction under this section 15, art. IV, the power to sell the lands of an estate to pay indebtedness; but, as seen, there has been express legislation under it, conferring other probate jurisdiction, and under the above authority this would be a limitation upon the exercise of such power of sale by the district courts under that section.

We must, then, find this jurisdiction, if at all, under section 10, article IV of the constitution.

This section gave to the district court all the common law and chancery jurisdiction known to the courts of common law and chancery of England, not incompatible with

the constitution and laws of the United States and of this state. Newson *v.* Chrisman, 9 Tex., 117.

The jurisdiction of a court of chancery of England over the administration of the assets of a deceased person, is founded upon the power of that court to enforce the execution of trusts, and as a means to accomplish this, the power to investigate and arrest fraud and fraudulent combinations to which the administrator is a party.

This jurisdiction, however, was not exclusive, but concurrent with the courts of common law and the ecclesiastical courts, and was only assumed by the courts of chancery, when the remedy at law was not plain, adequate and complete; as when it was necessary to take accounts, or compel a discovery. 1 Story's Eq. Jur., ch. IX; Dobbin *v.* Bryan, 5 Tex., 276; Crain *v.* Crain, 17 Tex., 86.

The allegations in the petition to the district court of Navarro county in this case, by which it was sought to give that court jurisdiction, were very general, and there was no fraudulent combination averred between the administrator and any other person. With the exception of the alleged fraud in his account, and which seems not to have been sustained by the district court, it is believed that the probate court could have afforded a plain and adequate remedy as against the administrator for all the grievances complained of.

We have had repeated decisions of this court, in cases in which the original jurisdiction of the district courts, as courts of chancery, in matters pertaining to estates, and to executors, administrators and guardians, has been under consideration, but we have been referred to none, nor has one come under our observation, in which the district court had assumed, under this section 10, to transfer to its own jurisdiction a pending administration from the probate court, and to conduct the same by the administrator, and proceed to sell the lands of the estate for the

payment of indebtedness, as seems to have been attempted in this case.

In Long v. Wortham, 4 Tex., 381, it is said that the exercise of probate jurisdiction by the district courts would almost as a matter of course be by the appointment of a receiver.

We will briefly advert to some of the decisions on this subject, premising, as said in Cannon v. McDaniel, that the tendency of later decisions has long been to discourage a resort to the district court in matters relating to the estates of deceased persons, where the powers of the probate court were sufficient to give the complainant full relief in the assertion of his rights, although it might produce a hardship or inconvenience on the party. 46 Tex., 312; Giddings v. Crosby, 24 Tex., 299; Atchison v. Smith, 25 Tex., 230.

Chevallier v. Wilson, 1 Tex., 161, was brought to enforce an alleged gift of a slave by the intestate, and which was claimed as property of his estate by the administrator, and for the sale of which he had obtained an order of the probate court; and also to resist the claim of the administrator for the full value of certain claims against the estate, which it was alleged that he had purchased at a discount in view of administration.

This was evidently a case in which the probate court could not afford a full and adequate remedy and was properly cognizable by the district court.

Dobbin v. Bryan, 5 Tex., 276, was a suit in the district court against the administrator to establish a rejected claim, and to set aside a probate sale alleged to have been illegally made by a fraudulent combination between the administrator and a third party. The judgment of the district court setting aside the sale, establishing the claim, and ordering it to be paid in due course of administration, was affirmed.

It would seem, in that case, that the district court did

not order a resale of the property, but that the subsequent proceedings were had in the probate court.

Smith *v.* Smith, 11 Tex., 102, was a suit by an heir-at-law against the administrator for distribution, alleging payment of all the debts; that a pretended division made in the probate court had been fraudulently procured by the administratrix; that she had falsely induced the court to believe that certain property of the estate was community property of herself and the deceased, when in fact it was his separate estate; and that with the proceeds of the sales of part of the estate she had purchased other property, and had taken the titles to the same in the name of her children.

In that case the chancery jurisdiction of the district court was clearly maintainable on the grounds of breach of trust, and fraud, and because the probate court was inadequate to grant the appropriate relief, and this court reversed the judgment of the court below sustaining a demurrer for want of jurisdiction. The question of the power of the district court to order a sale of land did not arise. The case, moreover, was one rather in the nature of a suit for partition than an administration.

Purvis *v.* Sherrod, 12 Tex., 140, was a suit by an executor to obtain the proper construction of two clauses in the will of his testator, a familiar ground of equity jurisdiction, and for instructions as to the proper execution in due course of administration of his powers under the will.

Crain *v.* Crain, 17 Tex., 80, was also the exercise of a familiar ground of equity jurisdiction. It was a suit brought to cancel a deed alleged to have been testamentary in its character, and made in fraud of the rights of the heirs of the estate, and to defeat a fraudulent combination between the administrator and third parties to prevent the property being made assets of the estate.

The judgment of the court below sustaining a demurrer to the petition for want of jurisdiction was reversed, but·

no question was made or decided as to the power of the district court to order a sale of the property.

Breton *v.* Alexander, 27 Tex., 659, was brought for a similar object, and in which the judgment of the district court cancelling the alleged deed of gift, ascertaining the respective shares of the parties, and ordering that further proceedings be had in the probate court to carry the judgment into effect, was substantially approved by this court, though it was reversed upon another ground.

The further administration of that estate was in fact carried on in the probate court of Cherokee county.

In none of the above cases, nor in any other to which our attention has been called, has it been decreed that the district court, in the exercise of its chancery powers, had jurisdiction to order the sale of land for the payment of debts of an estate, upon which administration had been commenced in the probate court.

We are of opinion that the district court of Navarro county did not have, under the circumstances shown by the record in this case, jurisdiction to order the sale of the 1,420 acres, part of the land in controversy, under either sections 10 or 15 of the constitution of 1845, or any law enacted by virtue of them. As said in Atchison *v.* Smith, 25 Tex., 231, " If the precedent be established and followed, such as this case contemplates, almost every large estate will, upon some ground or other, be finally drawn into the district court for settlement and distribution; and the county court will be deprived of the exercise of its appropriate functions.".

If the district court had the power of a probate court to have ordered a sale, and the formalities of the law had been complied with, then, as an authorized proceeding *in rem*, the judgment would have been binding upon all parties interested in the estate. .

It is believed, however, that the same rule would not apply to a sale made by the district court, in an original

proceeding in the exercise of its chancery powers, but that in such case, even if the court had jurisdiction of the subject matter, its decree would be binding only upon the immediate parties or their privies.

Some of the plaintiffs in this case were neither parties, nor, in the right under which they claim, privies to the suit and judgment in the district court of Navarro county, ordering the sale of the land, and on this ground also would not be estopped by it.

.The above, for the purpose of this appeal, virtually disposes of the claim.of the defendants to 1,420 acres of the land in controversy. What may be the ultimate equities of the parties is not now presented for our consideration.

It also disposes of the case as between the original defendants and the intervenors, the heirs of Stroud Melton, who claim under the same proceedings in the district court.

VI. It remains to consider the question of title to the 500 acres claimed by defendants Kinnard & Box.

Whether the deed made by Stroud Melton for himself, and by Thomas J. Echols, as the purported attorney in fact for certain of the supposed heirs of Eliel Melton, deceased, to Jonathan Melton, under which Kinnard and Box deraign their title, was properly recorded so as to permit a certified copy of it to be read in evidence, presents some serious questions which have not been argued by counsel and upon which no authorities have been presented.

For these reasons, and because under the view we take of other points involved a decision of these questions is not necessary, we give no opinion upon them.

The power of attorney under which Echols executed this deed was a necessary link in the chain of title of these defendants. This power of attorney was not introduced in evidence. The testimony of Mrs. Jonathan Melton was not satisfactory as to its execution and contents. The

testimony of the remaining witness on this subject, Thomas J. Echols, was positive that it did not give him authority to convey.

In this connection, it may be added that there was no recital in the power of attorney showing that it had ·been given by Tabitha Melton.

Besides this, the statement of facts fails to show that the defendants paid any value for the land.

As thus presented, the title of the defendants is not sufficient to defeat the apparent legal title shown in the plaintiffs, and there was error in the judgment below to the contrary.

There are quite a number of other questions presented by the record, but as some of them will probably not be raised upon another trial, and as others may be important in their results and have not been fully argued and no authorities cited in their support, we do not deem it proper to express any opinion upon them.

There was no issue presented by the charge to the jury upon the questions of limitation and stale demand, as between the plaintiffs and defendants, and hence they are not considered by us.

REVERSED AND REMANDED.

[Opinion delivered November 10, 1880.]